# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Criminal No. 07-0113 (RBW)** |
| | : | |
| **v.** | : | |
| | : | |
| **DUANE MCKINNEY** | : | |
| | : | |
| **and** | : | |
| | : | |
| **JOE D. LILES,** | : | |
| **Defendants.** | : | |

## GOVERNMENT'S MOTION AND NOTICE OF INTENT TO INTRODUCE OTHER CRIMES EVIDENCE PURSUANT TO RULE 404(b)

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby provides notice of its intent to introduce "other crimes evidence" pursuant to Federal Rule of Evidence 404(b). This memorandum sets forth: *first*, evidence which is <u>not</u> "other" crimes evidence, as it is part and parcel of the indicted scheme; and *second*, "other crimes evidence" which is admissible pursuant to Fed. R. Evid. 404(b). Finally, the government notes the existence of evidence which would be admissible should the defendant take the stand or put his credibility or reputation at issue.

## BACKGROUND

Defendant Duane McKinney is charged with taking real estate properties by fraud. Through forged and filed deeds transferring properties to himself or a nominee, the defendant McKinney gained about 16 real estate properties. Co-defendant Joe Liles assisted by falsely notarizing the names of the grantors on the forged deeds and falsely attesting that the grantors signed in his presence, when they did not (many of the grantors had died before the deeds were signed and filed). Once he obtained the real estate, defendant McKinney took possession and acted as if he owned it.

Upon selling some of the properties, McKinney gained in excess of $770,000.

## ARGUMENT

## I.     Evidence of the Scheme Supports the Indicted Crimes.

### A.     Fraudulent Transfer of Ownership Interests in Sixteen Properties

This indictment charges a scheme to defraud and a conspiracy to create forged securities relating to about sixteen properties.[1]  Specifically, the indictment charges:

> 24.     It was a further part of the conspiracy that the defendants DUANE McKINNEY and JOE D. LILES carried out this conspiracy with about sixteen properties, in the District of Columbia and Prince George's County, Maryland.

Superseding Indictment, filed July 6, 2007 at 7.

In order to support the charged crimes, the government will be introducing evidence regarding all sixteen properties.  This evidence will consist of the forged deeds transferring the properties from the true owners to the defendant or his nominee.  At times, this evidence will also include death certificates and/or testimony from the heirs of the deceased owners, and testimony from the still-living owners.  Connecting the defendant with the crime and showing the motive or profit, the government will introduce evidence of buyers paying money to the defendant when he represented to them that he was the owner with authority to sell the properties.  This evidence, which is part and parcel of the indictment, is admissible without a need for a calculation under Fed. R. Evid. 404(b).  *See United States v. Mejia*, 448 F.3d 436, 447 (D.C. Cir. 2006) (evidence of drug

---

[1]Some properties consist of unimproved land, which are identified by more than one "lot" and "square" number.  For example, technically, there are two different parcels of land for 6108 9th Street, N.W. (rear).  However, for simplicity sake, the government refers to these properties as just one property (similar to the aggregate of "Seven lots in S.E.").  This is the reason that the indictment and the government qualify the number of properties, and use the phrase, "about sixteen properties."

trafficking before the seizures of cocaine admissible as part of the conspiracy alleged in the indictment "because it is not an 'other' crime"), *cert. denied*, 127 S.Ct 989 (2007); *United States v. King*, 200 F.3d 1207 (9th Cir. 1999) (upholding district court's admission of evidence of business activity in bank fraud trial as direct evidence of charged crime).

### B.    False Statements to Social Security Administration

The indictment also charges, as part of the scheme and conspiracy, that the defendant used nominees (which include "The Brotherhood of Men") in his real estate scheme.  The indictment charges:

> 23.    It was a further part of the conspiracy that the defendant DUANE McKINNEY used the nominees so as to hide from the Social Security Administration the fact that he was obtaining money through the sale of properties in order that he might continue to receive Supplemental Security Income payments.

Superseding Indictment, filed July 6, 2007 at 6.

Beginning in 1995, defendant McKinney received Supplemental Security Income payments after being shot in the back.   Because the defendant had not worked a sufficient number of quarters to meet the requirements for social security benefits, he only became eligible for payments under the Social Security Administration's Supplemental Security Income (SSI) program for those who are completely disabled.  The SSI program is a "need based" program, commonly referred to as "federal welfare."  SSI pays benefits (for McKinney, the amount was about $600 per month) to individuals who are totally disabled, without any income, and with assets of less than $2,000.

Upon learning of the defendant's substantial assets (including well-funded bank accounts and high-end vehicles) in 2006, the Social Security Administration discontinued the defendant from the SSI program.  The defendant protested and submitted two written statements to the Social Security

Administration in 2006.  In both statements, the defendant claimed (falsely) that he had no income,

owned no vehicles or cars, and had no bank accounts and no assets.  *See* Request for Reconsideration

and Request for Waiver, attached as Exhibit A to this Motion (address and SSN redacted in publicly

filed version).  Again, this evidence is part and parcel of the indicted crimes and is admissible.[2]

### C.    Financial Transactions Involving Money Obtained by Fraud

In order to prove that the defendant McKinney was the party responsible for the overall fraud

scheme, the government intends to follow its usual practice in showing who profited from the fraud

scheme.  In that regard, the government will "follow the money" with documentary and summary

witness testimony demonstrating that the defendant controlled how, when, and where the money was

transferred amongst bank accounts and then withdrawn in cash or spent.  For purposes of the instant

motion, the government merely expounds upon a single series of withdrawals, as these particular

withdrawals could be viewed as evidence of a separate crime, that of "structuring" in violation of

31 U.S.C. § 5324.

The background is as follows: by the end of the fraud scheme, late fall 2006 through the

winter of 2007, the defendant had already been subject to numerous Currency Transaction Reports

("CTRs") for withdrawing or depositing more than $10,000 in cash, and the proceeds of his scheme

---

[2]Should the Court disagree with the government's analysis, the government would submit
that these statements are admissible as "other crimes" evidence.  The lies to Social Security
Administration are evidence of the defendant's motive, intent, and knowledge (permissible
purposes under Rule 404(b)).  By lying to Social Security Administration about his income and
ownership of bank accounts and vehicles, the defendant attempted to distance himself from The
Brotherhood of Men and the fact that it was merely a shell for his financial transactions.  *See*
*United States v. Johnson*, 46 F.3d 1166, 1171 (D.C. Cir. 1995) (evidence of appellant's false
statement regarding employment admissible as evidence suggesting concealment of true source
of income - drug dealing).  Thus, the evidence is probative of issues which will be central to the
trial and instructive for the jury to consider in weighing the guilt or innocence of the defendant.

had already been subject to several administrative or judicial seizures. As a result, for the sale of the

416 Carmody Hills property,[3] the defendant engaged in various tactics seemingly for hiding the

money and avoiding reporting requirements.

In December 2006, the defendant sold 416 Carmody Hills. Following the defendant's

directions, the settlement company wired $125,043.49 into a PNC Bank account in the sole name

of Duane McKinney; the defendant opened this account on November 30, 2006 and was the sole

signatory authorized to conduct business on the account. With this money that he obtained from

selling 416 Carmody Hills, the defendant chose not to leave the money in a bank account, nor did

he withdraw cash or negotiable instruments in his own name; instead, he engaged in the following

transactions:

> \*purchase of cashier's check to **Harvey L. Stone** for $120,000 on 12/26/2006
> (check re-deposited on 1/24/2007 into same account with the defendant's endorsement
> and the notation "Not used for purposed [sic] Intended");
>
> \*purchase of cashier's check to **Korey Stone** for $108,000 on 1/24/2007
> (check re-deposited on 2/21/2007 into same account with the defendant's endorsement
> and the notation "not used for intended purposes");
>
> \*purchase of cashier's check to **Corey L. Douglas** for $99,000 on 2/21/2007.

This $99,000 cashier's check to Corey L. Douglas was deposited on March 1, 2007 into a

Bank of America account opened on that same day in the name of "Duane McKinney d/b/a Corey

---

[3]The property at 416 Carmody Hills Drive, Capitol Heights, Maryland is one of the
sixteen properties at issue in the indictment, which charges: "On or about October 11, 2006, the
defendant DUANE McKINNEY caused a forged deed and supplement to the deed to be filed in
Prince George's County Land Records. These forged documents falsely represented that G.W.
conveyed 418 Carmody Hills Drive to BOM, although at the time of the supplement and the
filing of the deed, G.W. was deceased, in that she died on May 29, 2003. In addition, the deed
contained the forged signature of a Notary, who was not a Notary on the purported date of the
deed." Superseding Indictment, filed July 6, 2007, at 11.

L. Douglas." Again, the defendant was the sole signatory on the account. Within fifteen days of the account's opening, the defendant had drained out the money in a series of cash transactions seemingly designed to avoid the currency reporting requirements. Specifically, the following transactions took place:

March 1 - account opened and $99,000 check to Corey L. Douglas deposited;

March 2 - $6,100 cash withdrawal;

March 8 - $9,900 cash withdrawal;

March 8 - $9,800 cash withdrawal;

March 9 - $9,900 cash withdrawal;

March 9 - $9,400 cash withdrawal;

March 12- two counter debits;

March 12- $9,900 cash withdrawal;

March 15- $9,900 cash withdrawal.

March 15- $3,000 cash withdrawal

------------------------------------------
Balance as of March 15 - $197.13

This series of withdrawals, most just shy of the $10,000 which triggers the bank's requirement to file the CTRs, may be viewed as violating the law against "structuring," 31 U.S.C. § 5324.[4] To be clear, the government will not be requesting that the Court instruct the jury that the facts suggest a structuring violation. The government's purpose is to provide the jury with facts

---

[4]31 U.S.C. §5324(a)(3) prohibits a person "for the purpose of evading the reporting requirements" from "structur[ing] or assist[ing] in structuring, or attempt[ing] to structure or assist[ing] in structuring, any transaction with one or more domestic financial institutions."

showing the defendant's control of the money and consciousness of guilt and knowledge of the fraudulent nature of the money.  In short, the evidence is part of the intrinsic proof of the indicted scheme.  "It is axiomatic that evidence concerning the possession or expenditure of large amounts of currency is admissible where the defendant is charged with a crime in which pecuniary gain is the basic motive." *United States* v. *Wood*, 834 F.2d 1382, 1386 (8th Cir. 1987) (purchase of $1 million jet airplane admissible in trial charging drug dealing as evidence that defendant possessed ill-gotten gains), *abrogated on other grounds by*, *United States* v. *Aguayo-Delgado*, 220 F.3d 926 (8th Cir. 2002).   The control of the money is part of the fraud scheme as alleged in the indictment.  *See e.g.,* Superseding Indictment, paragraph 20, ("For many of the properties, the defendant McKINNEY completed the sales, with the buyers paying the defendant McKINNEY money, which the defendant MCKINNEY used for his own personal desires and to promote and carry on the conspiracy.").  In "cases where the incident offered is a part of the conspiracy alleged in the indictment, the evidence is admissible under Rule 404(b) because it is not an 'other' crime." *United States* v. *Badru*, 97 F.3d 1471, 1475 (D.C. Cir.1996) (internal quotations and citation omitted) (evidence of drug couriers' trips to Nigeria admissible as direct evidence of conspiracy), *cert. denied*, 520 U.S. 1213 (1997).

Even if the Court were to disagree with the government's analysis and consider the admissibility as governed by Rule 404(b), the evidence is admissible as relevant to issues of intent, lack of mistake, and knowledge, and is not excluded under Rule 403. Courts have allowed "other crimes" evidence of structuring in fraud trials. *See e.g., United States v. Nickson*, 2005 WL 742763 (6th Cir. 2005) (unpublished decision) (guilty plea to 60 counts of "structuring" admissible in money laundering trial as evidence of "an intent, when engaging in transactions with money withdrawn from his bank accounts, to conceal illegally garnered money"); *United States v. Edelmann*, 458 F.3d 791,

7

810 (8th Cir. 2006) (15-year-old convictions for causing the filing of a false CTR and theft admissible

in mail fraud trial in that they "demonstrate[d] the same method of deception [the defendant] used

in the instant case"). Thus, the evidence of the defendant's handling of the ill-gotten gains is

admissible in the government's case.

      **D.**    **Evidence of One of the Ways that Defendant Spent the Fraudulent Proceeds.**

      One of the ways that the defendant spent the money he gained from the sales of fraudulently

obtained property was by buying illegal narcotics. The government's evidence is that the defendant,

along with another, purchased quantities of cocaine for re-sale. According to witnesses, the

defendant used the money from the sale of the properties to fund the purchase of the drugs. Again,

this evidence is part and parcel of the indictment, in proving the existence of the scheme, the person

who is criminally responsible for the scheme, and the defendant's intent in obtaining money by

fraud.[5]

**II.**    **Evidence of "Other Crimes" is Admissible Under Rule 404(b).**

      **A.**    **Factual Background**

      In applying for a real estate license, the defendant McKinney lied about his lack of prior

felony conviction. Records from the Maryland Real Estate Commission show that McKinney

applied for a real estate license in October 2005. In the application, signed under penalties of

perjury, Duane McKinney answered "no" to the question, "Have you ever been convicted, in any

jurisdiction, of any of the following: a felony. . ." Defendant McKinney was not truthful in his

---

     [5]If the Court disagrees and excludes the evidence from the government's case-in-chief, the defendant is on notice that should he present evidence or argument that the money from the sales of the properties went to The Brotherhood of Men for charitable purposes, the government retains its right to present contrary evidence as to the true destination of some of the fraudulently-obtained money.

signed application. In fact, McKinney was convicted in 1992 of Robbery in Prince George's County, Maryland and sentenced to twelve years incarceration. *See* Pretrial Services Report, dated 5/2/07, at 3. After post-conviction relief was granted, on March 10, 1994, the defendant withdrew his plea of not guilty and entered "Alford" pleas to nine counts; the court sentenced the defendant to terms ranging from 10 to 20 years, with all but six years suspended, and five years of supervised probation following the jail terms. By answering "no," defendant McKinney obtained his real estate license by falsely answering questions, under the penalties of perjury, in the license application.

### B.   Legal Justification

Rule 404(b) of the Federal Rules of Evidence governs the admission of other crimes, wrongs, or acts of the defendant. Evidence of other crimes, wrongs, or acts is admissible under Fed. R. Evid. 404(b) if offered for a permissible purpose. Such permissible purposes include proof of intent, motive, opportunity, plan, knowledge, identity or absence of mistake or accident. Fed. R. Evid. 404(b); *see also United States v. Douglas*, 482 F.3d 591, 597 (D.C. Cir. 2007) (evidence that appellant previously possessed and distributed cocaine to an undercover police officer admissible as it "has a tendency to make it more probable" that he knew what he was charged with possessing and had the intent to distribute it).

Our Circuit has interpreted this rule liberally. *See United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000) (describing the rule as one "of inclusion rather than exclusion"). As the D.C. Circuit stated this year, "a Rule 404(b) objection will not be sustained if 1) the evidence of other crimes or acts is relevant in that it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence;' 2) the fact of consequence to which the evidence is directed related to a matter

in issue other than the defendant's character or propensity to commit crime; and 3) the evidence is sufficient to support a jury finding that the defendant committed the other crime or act." *United States v. Douglas*, 482 F.3d at 596 (citations omitted).

Rule 404(b) "does not prohibit character evidence" but only "that which lacks *any* purpose but proving character." *United States* v. *Douglas*, 482 F.3d at 596 (citations omitted)(emphasis in original). Rule 404(b) excludes only evidence that "is offered for the *sole purpose* of proving that a person's actions conformed to his or her character." *United States v. Long*, 328 F.3d 655, 661 (D.C. Cir.) (emphasis added), *cert. denied*, 540 U.S. 1075 (2003).

Evidence that McKinney obtained a real estate license by the only means available to him - that is, by lying on the application - is evidence of his intent, preparation, plan, knowledge, and absence of mistake or accident. The indictment charges the defendant with engaging in a real estate fraud scheme, with stealing real estate and selling that stolen real estate to others in order to gain money for himself. Part of his preparation, or plan during the scheme, could be to obtain a real estate license to provide a *bono fides* to those who would be giving him money or assisting him in selling the real estate. The purchasers and the settlement agents would be more likely to believe that the defendant was legitimate if he had a real estate license. If the defendant claims that he "mistakenly" obtained the property, the evidence that he lied to get a real estate license, coupled with the false statements on the deeds, is probative of his absence of mistake. The defendant's lies on the real estate application show a "'pattern of operation that would suggest intent' and that tends to undermine the defendant's innocent explanation." *United States v. Long*, 328 F.3d at 661.

Finally, obtaining the license by lying on the application is evidence of the defendant's intent. One of the basic issues in the trial, if not <u>the</u> issue in the trial, will be the defendant's intent to

defraud.  In order to determine the defendant's intent, the jury might be aided by evidence that the defendant used false statements in order to gain a real estate license.  The fact that the defendant tricked the Maryland Real Estate Commission to get a real estate agent license is evidence of his intent to trick the heirs and owners of their properties.  In fraud cases, courts have allowed evidence of other economic crimes evidence in order to assist the jury in determining the defendant's intent. *See United States* v. *Wonderly*, 70 F.3d 1020 (8th Cir. 1995) (post-indictment conduct of scam with other investors admissible as evidence of intent and knowledge and whether defendant was truthful in her claim that she believed investment opportunities were "virtually risk-free"), *cert. denied*, 517 U.S. 1146 (1996); *United States* v. *Harris*, 185 F.3d 999 (9th Cir.) (other crimes evidence of misappropriated money in unrelated partnership admissible as relevant to intent and absence of mistake in pension fund theft case), *cert. denied*, 528 U.S. 1055 (1999).

If the Court deems the evidence to be relevant, the Court should exclude the evidence only if its probative value "is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403; *see also Huddleston* v. *United States*, 485 U.S. 681, 686 (1988).

> [T]he language of Rule 403 tilts, as do the rules as a whole, toward the admission of evidence in close cases. . . . [I]n determining whether the probative value is *substantially* outweighed by the danger of *unfair* prejudice it is a sound rule that the balance should be struck in favor of admission when the evidence indicates a close relationship to the event charged.

*United States* v. *Clarke*, 24 F.3d 257, 265-66 (D.C. Cir. 1994) (emphasis in original) (internal quotation marks omitted). In the instant case, the probative value of the evidence outweighs its danger of unfair prejudice to McKinney. As discussed above, the other crimes evidence demonstrates McKinney's intent to commit the charged crimes, rather than any criminal propensities; it is therefore probative.

Unfair prejudice only exists when the relevant evidence misleads or confuses the jury into finding the defendant guilty of the other crime, rather than the charged crime. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief* v. *United States*, 519 U.S. 172, 180 (1997) (internal citations and quotation marks omitted). Further, a primary goal of Rule 403 is to avoid a case in which "the jury may choose to punish the defendant for the similar rather than the charged act, or the jury may infer that the defendant is an evil person inclined to violate the law." *Huddleston*, 485 U.S. at 686.

The danger of unfair prejudice to defendant McKinney is minimal. The government will ask the defense to stipulate to the fact that the application contains a false statement, so the defense has the option to minimize the prejudice stemming from the fact that the defendant has been convicted of a violent felony. Rule 403 is not meant to exclude all evidence of crimes, since Rule 404(b) expressly permits the introduction of that evidence; therefore, the fact that it is evidence of a crime does not make it automatically prejudicial. Further, there is little danger of jury confusion on the crimes at issue. Therefore, the Court should allow the use of the false statement on the real estate agent application as "other crimes" evidence.

## III.    **Evidence Should the Defendant Put his Credibility or Reputation at Issue.**

As the government previously informed the Court, the defendant lied to the Pretrial Service Agency (PSA) about his employment. Under "Employment Information," PSA reported that the defendant claimed that he worked at "The Real Estate Store" and that the employment, as of the last verification date of April 20, 2007, was "current." *See* Pretrial Services Report at 6. However, the government learned from the owner of The Real Estate Store that McKinney was terminated for non-

performance from The Real Estate Store four months earlier in January 2007. As of April or May 2007, the defendant did not work for The Real Estate Store. In addition, the defendant has numerous arrests and to date, at least one criminal conviction. Should the defendant take the stand or present character witnesses attesting to his reputation for truthfulness, the government has the right to question him or his witnesses about these facts.

Federal Rule of Evidence 608(b) allows a witness to be confronted on cross-examination with specific instances of conduct short of a prior conviction, but only if the conduct is "probative of truthfulness or untruthfulness." When a defendant takes the stand and testifies on his behalf, he puts his credibility in issue. *United States* v. *Smith*, 80 F.3d 1188, 1193 (7th Cir. 1996). Prior bad acts that have not resulted in a conviction are admissible under Fed.R.Evid. 608(b) if relevant to the witness's character for truthfulness or untruthfulness. Certainly the jury is entitled to hear evidence of the defendant providing incorrect information to PSA, an arm of the court, in order to better access his credibility as a witness.

## CONCLUSION

For the foregoing reasons, evidence of acts intrinsic to the indictment are admissible as part of the charged offense. The evidence of "bad acts" outside those charged by the indictment should be admitted pursuant to Fed. R. Evid. 404(b). The evidence is not unfairly prejudicial, which would render it inadmissible under Fed. R. Evid. 403.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
for the District of Columbia

By: _____/s/_____
    VIRGINIA CHEATHAM
    Assistant United States Attorney
    D.C. Bar No. 411980
    Fraud/Public Corruption Section
    555 4th Street, N.W., 5th Floor
    Washington, D.C. 20530
    (202) 514-9732

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of July, 2007, that a copy of the foregoing Motion and proposed Order was served via ECF to counsel for the defendants, Duane McKinney and Joe Liles.

_____/s/_____
Virginia Cheatham
Assistant United States Attorney

14

Cr. No. 07-113 (RBW)

Exhibit A

SOCIAL SECURITY ADMINISTRATION

**REQUEST FOR RECONSIDERATION**

361    763    1039    P. 01/01
(Do not write in this space)

NAME OF CLAIMANT

SPOUSE'S NAME (Complete ONLY in SSI cases)

NAME OF WAGE EARNER OR SELF-EMPLOYED PERSON (If different from claimant)

SOCIAL SECURITY CLAIM NUMBER

SUPPLEMENTAL SECURITY INCOME (SSI) OR SPECIAL VETERANS BENEFITS (SVB) CLAIM NUMBER

SPOUSE'S SOCIAL SECURITY NUMBER (Complete ONLY in SSI cases)

Duane McKinney

CLAIM FOR (Specify type, e.g., retirement, disability, hospital insurance (SSI)/SVB, etc.)

I do not agree with the determination made on the above claim and request reconsideration. My reasons are:

McKinney do Not own or have None of the Real Estate or
Business you all are saying I own.

I declare under penalty of perjury that I have examined all the information on this form, and it is true and correct to the best of my knowledge.

CLAIMANT SIGNATURE

SIGNATURE OR NAME OF CLAIMANT'S REPRESENTATIVE

☐ NON-ATTORNEY    ☐ ATTORNEY

MAILING ADDRESS    Du____ Mc____ Dr

MAILING ADDRESS

CITY    Largo    STATE    Md    ZIP CODE

CITY    STATE    ZIP CODE

TELEPHONE NUMBER (include area code)    DATE  3/16/06

TELEPHONE NUMBER (include area code)    DATE

**EITHER THE CLAIMANT OR REPRESENTATIVE SHOULD SIGN - ENTER ADDRESSES FOR BOTH**

SUPPLEMENTAL SECURITY INCOME OR SPECIAL VETERANS BENEFITS RECONSIDERATION ONLY

(See the three ways to appeal in the How To Appeal Your Supplemental Security Income (SSI) or Special Veterans Benefit (SVB) Decision Instructions.)

"I want to appeal your decision about my claim for Supplemental Security Income (SSI) or Special Veterans Benefits (SVB). I've read about the three ways to appeal. I've checked the box below."

☐ Case Review    ☐ Informal Conference    ☑ Formal Conference

**TO BE COMPLETED BY SOCIAL SECURITY ADMINISTRATION**

See list of initial determinations.

1. HAS INITIAL DETERMINATION BEEN MADE?    ☐ YES    ☐ NO

2. CLAIMANT INSISTS ON FILING    ☐ YES    ☐ NO

3. IS THIS REQUEST FILED TIMELY? (If "NO", attach claimant's explanation for delay and attach any pertinent letter, material, or information in social security office.)    ☐ YES    ☐ NO

RETIREMENT AND SURVIVORS RECONSIDERATIONS ONLY (CHECK ONE) REFER TO (GN 03102.125)

☐ NO FURTHER DEVELOPMENT REQUIRED    (PGN 03102.125P)

☐ REQUIRED DEVELOPMENT ATTACHED

☐ REQUIRED DEVELOPMENT PENDING, WILL FORWARD OR ADVISE STATUS WITHIN 30 DAYS

SOCIAL SECURITY OFFICE ADDRESS

ROUTING INSTRUCTIONS (CHECK ONE)

☐ DISABILITY DETERMINATION SERVICES (ROUTE WITH DISABILITY FOLDER)

☐ ODO, BALTIMORE

☐ PROGRAM SERVICE CENTER

☐ OIO, BALTIMORE

☐ OEO, BALTIMORE

☐ DISTRICT OFFICE RECONSIDERATION

☐ CENTRAL PROCESSING SITE (SVB)

NOTE: Take or mail the signed original to your local Social Security office, the Veterans Affairs Regional Office in Manila or any U.S. Foreign Service post and keep a copy for your records.

Destroy Prior Editions

Claims Folder

TOTAL P.01

BRIGHTSEAT MD 20785
FEB 16 2006

MISC00678

# SOCIAL SECURITY ADMINISTRATION

## Request For Waiver Of Overpayment Recovery Or Change In Repayment Rate

Form Approved
OMB No. 0960-0037

We will use your answers on this form to decide if we can waive collection of the overpayment or change the amount you must pay us back each month. If we can't waive collection, we may use this form to decide how you should repay the money.

Please answer the questions on this form as completely as you can. We will help you fill out the form if you want. If you are filling out this form for someone else, answer the questions as they apply to that person.

1.  A.  Name of person on whose record the overpayment occurred:

    *Duane McKinney*

    B.  Social Security Number

    C.  Name of overpaid person(s) making this request and his/her Social Security Number(s):

2.  Check any of the following that apply. (Also, Fill in the dollar amount in B, C, or D.)

    A. ☑  The overpayment was not my fault and I cannot afford to pay the money back and/or it is unfair for some other reasons.

    B. ☐  I cannot afford to use all of my monthly benefit to pay back the overpayment. However I can afford to have $ _____ withheld each month.

    C. ☐  I am no longer receiving Supplement Security Income (SSI) payments. I want to pay back $ _____ each month instead of paying all of the money at once.

    D. ☐  I am receiving SSI payments. I want to pay back $ _____ each month instead of paying 10% of my total income.

### FOR SSA USE ONLY

ROAR Input ☐ Yes ☐ No

Input Date:

Waiver ☐ Approval ☐ Denial

SSI: ☐ Yes ☐ No

AMT OF OP $

PERIOD (DATES) OF OP

# SECTION I-INFORMATION ABOUT RECEIVING THE OVERPAYMENT

**3.**

A. Did you, as representative payee, receive the overpaid benefits to use for the beneficiary?    ☑ Yes    ☐ No (Skip to Question

B. Name and address of the beneficiary    _Duane McKinley 2 th _____ Large Ca_

C. How were the overpaid benefits used?    _To pay rent & eat_

**4.**

A. If we are asking you to repay someone else's overpayment:

A. Was the overpaid person living with you when he/she was overpaid?    ☐ Yes    ☐ No

B. Did you receive any of the overpaid money?    ☐ Yes    ☐ No

C. Explain what you know about the overpayment AND why it was not your fault.

**5.**

Why did you think you were due the overpaid money and why do you think you were not at fault in causing th
overpayment or accepting the money?    _Because of government requirements unable to
work due to disability factors_

**6.**

A. Did you tell us about the change or event that made you overpaid?    ☐ Yes    ☑ No

B. If no, why didn't you tell us?    _There was no change._

B. If yes, how, when and where did you tell us? If you told us by phone or in person, who did you talk
with and what was said?

C. If you did not hear from us after your report, and/or your benefits did not change, did you contact
us again?    ☐ Yes    ☐ No

**7.**

A. Have we ever overpaid you before?    ☐ Yes    ☑ No

If yes, on what Social Security number?    ☐☐☐ — ☐☐ — ☐☐☐☐

B. Why were you overpaid before? If the reason is similar to why you are overpaid now, explain what you did
to try to prevent the present overpayment.

# SECTION II-YOUR FINANCIAL STATEMENT

FOR SSA USE ONLY

NAME:

SSN:

You need to complete this section if you are asking us either to waive the collection of the overpayment or to change the rate at which we asked you to repay it. Please answer all questions as fully and as carefully as possible. We may ask to see some documents to support your statements, so you should have them with you when you visit our office.

**EXAMPLES ARE:**

- Current Rent or Mortgage Books
- Savings Passbooks
- Pay Stubs
- Your most recent Tax Return

- 2 or 3 recent utility, medical, charge card, and insurance bills
- Cancelled checks
- Similar documents for your spouse or dependent family members

Please write only whole dollar amounts-Round any cents to the nearest dollar. If you need more space for answers, use the "Remarks" section at the bottom of page 7.

**9.**

A. Do you now have any of the overpaid checks or money in your possession (or in a savings or other type of account)?

☐ Yes    Amount:$

☑ No    Return this amount to SSA

B. Did you have any of the overpaid checks or money in your possession (or in a savings or other type of account) at the time you received the overpayment notice?

☐ Yes    Amount:$

☑ No    Answer Question 10.

**10.** Explain why you believe you should not have to return this amount.

☑ Yes
☐ No

**ANSWER 11 AND 12 ONLY IF THE OVERPAYMENT IS SUPPLEMENTAL SECURITY INCOME PAYMENTS (SSI). IF NOT, SKIP TO 13.**

**11.**

A. Did you give away any property or cash after notification of the overpayment?

☐ Yes    (Answer Part B)

☑ No    (Go to question 12.)

B. Who received it, relationship (if any), description and value:

**12.**

A. Did you receive or sell any property or receive any cash (other than earnings) after notification of this overpayment?

☐ Yes    (Answer Part B)

☑ No    (Go to Question 13.)

B. Describe property and sale price or amount of cash received:

**13.**

A. Are you now receiving cash public assistance such as Supplemental Security Income (SSI) payments?

☐ Yes    (Answer B and C and See note below)

☑ No

B. Name or kind of public assistance

C. Claim Number

**IMPORTANT:** If you answered "YES" to question 13, DO NOT answer any more questions on this form. Go to page 8, sign and date the form, and give your address and phone number(s). Bring or mail any papers that show you receive public assistance to your local Social Security office as soon as possible.

## Members Of Household

**14.** List any person (child, parent, friend, etc.) who depends on you for support AND who lives with you.

| NAME | AGE | RELATIONSHIP (If none, explain why the person is dependent on you) |
|---|---|---|
| N/A | | |

## Assets-Things You Have And Own

**15.** A. How much money do you and any person(s) listed in question 14 above have as cash on hand, in a checking account, or otherwise readily available?    $ 0

B. Does your name, or that of any other member of your household appear, either alone or with any other person, on any of the following?

| TYPE OF ASSET | OWNER | BALANCE OR VALUE | PER MONTH |
|---|---|---|---|
| SAVINGS (Bank, Savings and Loan, Credit Union) | | $ | $ |
| CERTIFICATES OF DEPOSIT (CD) | | $ N/A | $ |
| INDIVIDUAL RETIREMENT ACCOUNT (IRA) | | $ N/A | $ |
| MONEY OR MUTUAL FUNDS | | $ N/A | $ |
| BONDS, STOCKS | | $ N/A | $ |
| TRUST FUND | | $ N/A | $ |
| CHECKING ACCOUNT | | $ N/A | $ |
| OTHER (EXPLAIN) | | $ | $ |
| TOTALS → | | $ | $ |

SHOW THE INCOME (Interest, dividends) EARNED EACH MONTH. (If none explain in spaces below) If paid quarterly, divide by 3.

Enter the "Per Month" total on line (k) of question 19.

**16.** A. If you or a member of your household own a car, (other than the family vehicle,) van, truck, camper, motorcycle, or any other vehicle or a boat, list below.

| OWNER | YEAR, MAKE/MODEL | PRESENT VALUE | LOAN BALANCE (if any) | MAIN PURPOSE FOR USE |
|---|---|---|---|---|
| None | | $ | $ | |
| | | $ | $ | |
| | | $ | $ | |

B. If you or a member of your household own any real estate (buildings or land), OTHER than where you live, or own or have an interest in, any business, property, or valuables, describe below.

| OWNER | DESCRIPTION | MARKET VALUE | LOAN BALANCE (if any) | USAGE-INCOME (rent etc.) |
|---|---|---|---|---|
| None | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |

Form SSA-632-BK (12-2002)  EF (04-2004)

Page 4

# Monthly Household Income

If paid weekly, multiply by 4.33 (4 1/3) to figure monthly pay. If paid every 2 weeks, multiply by 2.166 (2 1/6) if self-employed, enter 1/12 of net earnings. Enter monthly TAKE HOME amounts on line A of question 19 also.

**17.**  **A. Are you employed?**  ☑ YES (Provide information below)  ☐ NO (Skip to B)

Employer name, address, and phone: (Write "self" if self-employed)

| | Monthly TAKE-HOME pay (NET) $ | Monthly pay before deduction (Gross) $ |
|---|---|---|

**B. Is your spouse employed?**  ☐ YES (Provide information below)  ☑ NO (Skip to C)

Employer(s) name, address, and phone: (Write "self" if self-employed)

| | Monthly TAKE-HOME pay (NET) $ | Monthly pay before deduction (Gross) $ |
|---|---|---|

**C. Is any other person listed in Question 14 employed?**  ☐ YES (Provide information below)  ☑ NO (Go to Question 18)

Employer(s) name, address, and phone: (Write "self" if self-employed)

| Name(s) | Monthly TAKE-HOME pay (NET) $ | Monthly pay before deduction (Gross) $ |
|---|---|---|

**18.**  **A. Do you, your spouse or any dependent member of your household receive support or contributions from any person or organization?**  ☐ YES (Answer B)  ☑ NO (Go to question 19)

**B. How much money is received each month?** (Show this amount on line (J) of question 19)

| SOURCE | $ |
|---|---|

**19.** BE SURE TO SHOW **MONTHLY AMOUNTS BELOW** - If received weekly or every 2 weeks, read the instruction at the top of this page.

| INCOME FROM #17 AND #18 ABOVE AND OTHER INCOME TO YOUR HOUSEHOLD | YOURS | SPOUSE'S | OTHER HOUSEHOLD MEMBERS | SSA USE ONLY |
|---|---|---|---|---|
| A. Take Home Pay (Net) (From #17 A, B, C, above) | $ | $ | $ | |
| B. Social Security Benefits | ◯ | ◯ | | |
| C. Supplemental Security Income (SSI) | ◯ | ◯ | | |
| D. Pension(s) (V.A., Military, Civil Service, Railroad, etc.) TYPE | ◯ | ◯ | | |
| TYPE | ◯ | | | |
| E. Public Assistance (Other than SSI) TYPE | ◯ | | | |
| F. Food Stamps (Show full face value of stamps received) | ◯ | | | |
| G. Income from real estate (rent, etc.) (From question 16B) | ◯ | | | |
| H. Room and/or Board Payments (Explain in remarks below) | ◯ | | | |
| I. Child Support/Alimony | ◯ | | | |
| J. Other Support (From #18 (B) above) | ◯ | | | |
| K. Income From Assets (From question 15) | | | | |
| L. Other (From any source, explain below) | | | | |
| REMARKS | TOTALS $ | $ | $ | GRAND TOTAL $ (Add 3 total blocks above) |

MISC00687

# MONTHLY HOUSEHOLD EXPENSES

If the expense is paid weekly or every 2 weeks, read the instruction at top of Page 5. Do NOT list an expense that is
ield from income (Such as Medical Insurance). Only take home pay is used to figure income.

Show "CC" as the expense amount if the expense is part of CREDIT CARD EXPENSE SHOWN ON LINE (F).

**20.**

| | $ PER MONTH | SSA USE ONLY |
|---|---|---|
| A. Rent or Mortgage (If mortgage payment includes property or other local taxes, insurance, etc. DO NOT list again below. | $ | |
| B. Food (Groceries (include the value of food stamps) and food at restaurants, work, etc.) | ◯ | |
| C. Utilities (Gas, electric, telephone) | ◯ | |
| D. Other Heating/Cooking Fuel (Oil, propane, coal, wood, etc.) | ◯ | |
| E. Clothing | ◯ | |
| F. Credit Card Payments (show minimum monthly payment allowed) | ◯ | |
| G. Property Tax (State and local) | ◯ | |
| H. Other taxes or fees related to your home (trash collection, water-sewer fees) | ◯ | |
| I. Insurance (Life, health, fire, homeowner, renter, car, and any other casualty or liability policies) | ◯ | |
| J. Medical-Dental (After amount, if any, paid by insurance) | ◯ | |
| K. Car operation and maintenance (Show any car loan payment in (N) below) | ◯ | |
| L. Other transportation | ◯ | |
| M. Church-charity cash donations | ◯ | |
| N. Loan, credit, lay-away payments (if payment amount is optional, show minimum) | ◯ | |
| O. Support to someone NOT in household (Show name, age, relationship (if any) and address) | ◯ | |
| P. Any expense not shown above (Specify) | ◯ | |
| EXPENSE REMARKS Also explain any unusual or very large expenses, such as medical, college, etc.) | | |
| TOTAL | $ ◯ | |

Form SSA-632-BK (12-2002) EF (04-2004)

MISC00688



# INCOME AND EXPENSES COMPARISON

**21.** A. Monthly Income
(Write the amount here from the "Grand Total" of #19.

B. Monthly Expenses
Write the amount here from the "Total" of #20.

C. Adjusted Household Expenses

D. Adjusted Monthly Expenses (Add (B) and (C))

**22.** If your expenses (D) are more than your income (A), explain how you are paying your bills.

| FOR SSA USE ONLY | | | |
|---|---|---|---|
| | $ | | |
| | + | | |
| | $ | | |
| | + | $25 | |
| | ◯ | | |

| | INC. EXCEEDS ADJ. EXPENSE | | $ + |
| | INC. LESS THAN ADJ. EXPENSE | | $ |

## FINANCIAL EXPECTATION AND FUNDS AVAILABILITY

**23.** A. Do you, your spouse or any dependent member of your household expect your or their financial situation to change (for the better or worse) in the next 6 months? (For example: a tax refund, pay raise or full repayment of a current bill for the better-major house repairs for the worse).

☐ YES (Explain on line below)
☑ NO

B. If there is an amount of cash on hand or in checking accounts shown in item 15A, is it being held for a special purpose?

☑ No amount on hand
☐ NO (Money available for any use)
☐ YES (Explain on line below)

C. Is there any reason you CANNOT convert to cash the "Balance or Value" of any financial asset shown in item 15B.

☐ YES (Explain on line below)
☑ NO

D. Is there any reason you CANNOT SELL or otherwise convert to cash any of the assets shown in items 16A and B?

☐ YES (Explain on line below)
☑ NO

## REMARKS SPACE —

If you are continuing an answer to a question, please write the number (and letter, if any) of the question first.

MISC00689

# PENALTY CLAUSE, CERTIFICATION AND PRIVACY ACT STATEMENT

**I declare under penalty of perjury that I have examined all the information on this form, and on any accompanying statements or forms, and it is true and correct to the best of my knowledge. I understand that anyone who knowingly gives a false or misleading statement about a material fact in this information, or causes someone else to do so, commits a crime and may be sent to prison, or may face other penalties, or both.**

## SIGNATURE OF OVERPAID PERSON OR REPRESENTATIVE PAYEE

SIGNATURE (First name, middle initial, last name) (Write in ink)

| DATE (Month, Day, Year) |
|---|
| 2-16-06 |

SIGN HERE ►

MAILING ADDRESS (Number and street, P.O. Box, or Rural Route)

| WORK TELEPHONE NUMBER IF WE MAY CALL YOU AT WORK (Include area code) |
|---|

CITY AND STATE

| ZIP CODE | ENTER NAME OF COUNTY (IF ANY) IN WHICH YOU NOW LIVE |
|---|---|

**Witnesses are required ONLY if this statement has been signed by mark (X) above. If signed by mark (X), two witnesses to the signing who know the individual must sign below, giving their full addresses.**

SIGNATURE OF WITNESS

SIGNATURE OF WITNESS

ADDRESS (Number and street, City, State, and zip Code)

ADDRESS (Number and street, City, State, and zip Code)

## About the Privacy Act

The Social Security Act (Sections 204, 1631(b), and 1870) and the Federal Coal Mine Health and Safety Act of 1969 allow us to collect the facts on this form. This form is voluntary. However, if you do not give us the facts we ask for, we may not be able to approve your waiver request. If we cannot collect the overpayment, we may ask the Justice Department to collect it.

Sometimes the law requires us to give out the facts on this form without your consent. We must give these facts to another person or government agency if Federal law requires that we do so or to do the research and audits needed to monitor and improve the programs we manage.

We may also give these facts to the Justice Department to investigate and prosecute violations of the Social Security Act. We may use the facts in computer matching programs. Matching programs compare our records with those of other Federal, State, or local government agencies. All the Agencies may use matching programs to find or prove that a person es for benefits paid for or managed by the Federal nment. Another use is to identify and collect overpayments or to collect overdue loans under these benefits programs.

Explanations about these and other reasons why information you provide us may be used or given out are available in Social Security offices. If you want to learn more about this, contact any Social Security office.

**Paperwork Reduction Act Statement** - This information collection meets the requirements of 44 U.S.C. § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 2 hours to read the instructions, gather the facts, and answer the questions. **SEND THE COMPLETED FORM TO YOUR LOCAL SOCIAL SECURITY OFFICE. The office is listed under U.S. Government agencies in your telephone directory or you may call Social Security at 1-800-772-1213.** *You may send comments on our time estimate above to: SSA, 1338 Annex Building, Baltimore, MD 21235-0001. Send only comments relating to our time estimate to this address, not the completed form.*

MISC00690

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Criminal No. 07-0113 (RBW)** |
| | : | |
| **v.** | : | |
| | : | |
| **DUANE MCKINNEY** | : | |
| | : | |
| **and** | : | |
| | : | |
| **JOE D. LILES,** | : | |
| **Defendants.** | : | |

## ORDER

Upon consideration of the government's Motion to introduce other crimes evidence

pursuant to Federal Rules of Evidence 404(b),  it is this ___ day of August 2007, hereby:

ORDERED that the government may proceed with introducing other crimes evidence as

outlined in its motion dated July 27, 2007.


_____
REGGIE B. WALTON,
UNITED STATES DISTRICT COURT JUDGE


copies to:

Virginia Cheatham
United States Attorney's Office
Fraud and Public Corruption Section
555 4th Street, N.W.
Washington, D.C. 20530

Howard B. Katzoff, Esq.
717 D Street, N.W. Suite 310
Washington, D.C. 20004

Rudolph Acree, Esq.
1211 Connecticut Ave NW
Suite 506
Washington DC 20036