UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : Criminal No. 07-0113-02 (RBW) |
| | : |
| v. | : |
| | : |
| **JOE D. LILES,** | : |
|       **Defendant.** | : |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO LATE FILE

    The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully states that it does not oppose the defendant Liles' motion to late file his motion to suppress statements. In the event that the Court grants the defendant Liles' motion to late file, the government has attached the government's opposition to the motion to suppress statements to this response to the defendant Liles' motion to late file.[1]

    Respectfully submitted,

    JEFFREY A. TAYLOR
    United States Attorney

By: _____/s/_____
    VIRGINIA CHEATHAM
    Assistant United States Attorney
    D.C. Bar No. 411980
    Virginia.cheatham@usdoj.gov
    Fraud/Public Corruption Section
    555 4th Street, N.W., 5th Floor
    Washington, D.C. 20530
    (202) 514-9732

---

[1] The government attempted to file its Opposition to the Motion to Suppress Statements, but was instructed by the Clerk's Office that no Opposition could be filed until the Court ruled on the defendant's motion to late file. As the Court set today's date as the date for the government's opposition, the government seeks to comply with the Court's Order and the Clerk's Office's procedure by filing this response and attachment.

CERTIFICATE OF SERVICE

    I hereby certify that on November 9, 2007, a copy of the foregoing Response was sent via electronic case filing to: counsel for the defendant Joe D. Liles, Rudolph Acree.

                                                                                               /s/_____
                                                              Virginia Cheatham
                                                              Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : Criminal No. 07-0113-02 (RBW) |
| | : |
| v. | : |
| | : |
| JOE D. LILES, | : |
| Defendant. | : |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS STATEMENTS

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant Joe D. Liles' motion to suppress statements he voluntarily made to law enforcement agents. Because defendant Liles was not in custody at the time of the interview, the agents had no obligation to advise him of his *Miranda*[1] rights, and therefore, there is no basis for suppressing the defendant's statements. In support of its opposition, the government relies upon the following and any other evidence presented should the Court determine that an evidentiary hearing is necessary:

I.   PROCEDURAL BACKGROUND

On April 27, 2007, a federal grand jury returned an Indictment charging defendant Joe D. Liles with one count of Conspiracy to Commit Forged Securities. According to the Indictment, Liles conspired with co-defendant Duane McKinney to provide the D.C. Recorder of Deeds and the Prince George's County Land Records with forged deeds transferring properties from the true owners (or heirs of deceased owners) to McKinney or his company, The Brotherhood of Men ("The Brotherhood").

---

[1] *Miranda* v. *Arizona*, 384 U.S. 436 (1966).

The Indictment charges defendants Liles and McKinney with agreeing with each other to trick the Recorder of Deeds and Land Records offices into believing that the deeds were legitimate thus causing the properties to be conveyed in the official records from the true owners to McKinney or his company. Neither D.C. nor P.G. County would accept deeds which failed to have an original signature of an authorized, appointed, notary public, such as defendant Liles; thus, a notary's signature on the deeds was essential to the success of the scheme. For most of the deeds involved in the scheme, defendant Liles signed his name to the forged deeds falsely stating that he saw the owner sign the deeds as grantor and that the owner "personally appeared before [him]."

The Indictment further charges Duane McKinney alone with theft and a scheme to defraud by using the forged deeds to take control of properties that he did not own and to sell or encumber them to raise money; the Indictment further charges McKinney with criminal Forfeiture and Monetary Transactions by using the money he obtained through the scheme to purchase high-end vehicles. On July 6, 2007, the grand jury superseded the indictment; defendant Liles continues to be charged with just one count of Conspiracy.

II.   LILES' STATEMENTS TO THE GOVERNMENT

   A.   Statements Made to Law Enforcement Agents

On August 10, 2005, in the afternoon during business hours, Special Agents Ronald D. Williams, IRS - Criminal Investigation Division and Kelly Bender, FBI, visited defendant Joe D. Liles at "Joe's Unisex Barber Shop" where defendant Liles was the co-owner and has worked for over 26 years. Agents Williams and Bender, dressed in civilian clothes, suits and ties, with no weapons visible, introduced themselves, and identified themselves as federal law enforcement

agents, and asked defendant Liles if they could speak to him. Defendant Liles instructed the agents to wait as he in the process of cutting a customer's hair. After defendant Liles finished with the customer, and handled other business, Liles said that he would speak to them. The agents asked where they could talk. Defendant Liles suggested a "Subway" fast-food restaurant, which was next door to the barber shop. The three men sat at a small table, with neither agent blocking defendant Liles' means of egress. The agents told defendant Liles that they were investigating real estate sales and transactions and wanted to talk to him as his name was listed as the notary.

After reviewing and returning defendant Liles' driver's license, the agents proceeded to talk to defendant Liles in a polite and conversational tone; they remained sitting and did not shout. The manner in which they interviewed defendant Liles was not coercive, heavy-handed, intimidating, or deceptive. Defendant Liles appeared comfortable and at ease in responding to the agents' questions. The substance of defendant Liles' statement to Agents Williams and Bender is memorialized in a FBI "302", a copy of which is attached to this Opposition as Exhibit 1.[2] In essence, defendant Liles told the agents that, among his other jobs, he had been a sworn Notary Public for the State of Maryland for 12 - 15 years. Defendant Liles admitted that he knew Duane McKinney because either he or his co-worker had been cutting McKinney's hair at the barber shop for the past 20 years. Defendant Liles understood McKinney to be involved in real estate.

---

[2] In the FBI 302 attached to this Opposition, the government redacted defendant Liles' personal information for privacy reasons. The defense counsel has an unredacted copy.

The agents showed defendant Liles a number of different deeds, each with defendant Liles' signature. Defendant Liles identified each deed as a document which he notarized and acknowledged that the "grantor" had not appeared before him when he, Liles, notarized the grantor's signature. Defendant Liles then admitted to the agents that he notarized deeds for McKinney without both parties to the transaction being present to sign the documents; in fact, defendant Liles said that McKinney never brought another person or party to any transaction which defendant Liles notarized for McKinney. The documents had already been signed before defendant Liles affixed his notary seal.

Defendant Liles told the agents that he notarized the documents because he trusted McKinney, who would always have an excuse about why the persons could not be present. Defendant Liles said that he understood that his job as a public notary was to verify that the persons signed the documents before him were who they identified themselves to be. Defendant Liles admitted that he should not have notarized the signatures, but did so because he trusted McKinney and believed that McKinney would not have put him in such a situation. The agents asked defendant Liles what he thought should happen to a notary who signed deeds without the owner being present; Liles opined that the notary should be held responsible.[3]

B.   Meeting at U.S. Attorney's Office

After the investigation was transferred to the undersigned counsel in early 2007, the government sent the standard pre-indictment letter to defendant Liles listing the charges under investigation, explaining how he could obtain a court-appointed attorney, and offering a meeting

---

[3] At trial, the government will be redacting various statements to comply with *Bruton* v. *United States*, 391 U.S. 123 (1968).

4

to discuss the charges before possible indictment.[4] This letter, attached to this Opposition as Exhibit 2, states, "As these are serious violations, which carry possible jail sentences, you will need to bring an attorney with you. If you cannot afford to hire an attorney, please telephone Ms. Sarah Forrest, Paralegal Specialist with our office. . . if you are truly without funds to hire an attorney, Ms. Forrest will attempt to arrange to have an attorney appointed for you." Letter, dated February 1, 2007, attached as Exhibit 2.[5] This letter is the mechanism for unrepresented persons to make an appointment with the Federal Public Defender to file a financial affidavit, to be approved by the magistrate judge, and to obtain a public defender or a court-appointed lawyer under the Criminal Justice Act.

However, defendant Liles did not seek to obtain a lawyer. Instead, he showed up at the U.S. Attorney's Office without an attorney representing him. He met with the undersigned Assistant U.S. Attorney, Special Agents Bender and Williams, and an investigator with the D.C. Department of Insurance, Securities, and Banking. At this meeting, the undersigned Assistant U.S. Attorney explained the importance of getting legal representation and emphasized that if defendant Liles was unable to afford representation, the court would appoint an attorney for him. The government does not intend to use any statement made by the defendant at this meeting in its case-in-chief or in cross-examination or in rebuttal.[6]

---

[4] The government issued this letter to defendant Liles because it viewed (and continues to view) Liles as a necessary component, but a less culpable defendant, of the Forged Securities violations.

[5] Defendant Liles' personal information is also deleted from this exhibit for public filing.

[6] After indictment, the government did not ask the magistrate judge to issue a bench warrant for defendant Liles, in part due to the fact that he appeared at this scheduled pre-indictment meeting.

III.    ARGUMENT

    A.    <u>Defendant Liles Was Not in Custody During the Agents' Interview</u>

The Fifth Amendment privilege "serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves." *Miranda* v. *Arizona*, 384 U.S. 436, 467 (1966). Therefore, the Supreme Court concluded, "the accused must be adequately and effectively apprised of his rights" during "in-custody interrogation." *Id.* "Fidelity to the doctrine announced in *Miranda* requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated." *Berkemer* v. *McCarty*, 468 U.S. 420, 437 (1984).

"Although the circumstances of each case must certainly influence a determination of whether a suspect is 'in custody' for purposes of receiving of *Miranda* protection, the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California* v. *Beheler*, 463 U.S. 1121, 1125 (1983). *See Stansbury* v. *California*, 511 U.S. 318, 322 (1994). "'Custody' is determined objectively: would a reasonable person have understood his situation to be comparable to a formal arrest?" *United States* v. *Gaston*, 357 F.3d 77 (D.C. Cir. 2004), *citing Berkemer*, 468 U.S. at 442.

The circumstances of defendant Liles' conversation with the agents would lead a reasonable person to believe that s/he was <u>not</u> under formal arrest. The agents politely asked defendant Liles for an interview in the afternoon during business hours. The agents were professionally dressed in suits and ties. Liles told the agents to wait. The agents waited. Liles chose where to talk with the agents. The agents agreed. These were not the actions of a man who believed that he was under formal arrest. At no time during the interview did the agents

display weapons or handcuffs, or impede defendant Liles' means of leaving the restaurant. Indeed, it was defendant Liles who seemed to be in charge of when and where he would speak to the agents.

This is not a case where law enforcement agents rammed down a defendant's door in executing a search warrant, pointed weapons at a defendant, placed handcuffs on a defendant and then proceeded to ask questions. *Compare*, *United States* v. *Calloway*, 298 F.Supp2d 39, 49, (D.D.C. 2003)(district court found that a defendant who was handcuffed during the execution of a search warrant was not in custody for purposes of *Miranda*). Nor is it a case where defendant Liles was effectively prevented from leaving because of the physical constraints of a bus. *Compare United States* v. *Lewis*, 921 F.2d 1294 (in narcotics interdiction case, the fact that the single avenue of exit was narrow and blocked with people was not fault of police). This is not a case where agents interviewed defendant Liles late at night. *Id.* at 1297 ("time of day" one factor in the determination whether person "seized" for purposes of Fourth Amendment). Instead, defendant Liles simply met and talked with two federal law enforcement agents, who were dressed in suits and ties and who displayed no weapons and who spoke in normal tones of voice, during the afternoon, in a public place, clearly understanding that he was not under arrest. In this case, defendant Liles was not even seized, much less in custody at the time he made the statements to the agents and thus, no *Miranda* rights need have been given.

  B. <u>Defendant Liles' Statements Were Voluntary.</u>

It is well settled that the voluntariness of statements by a defendant is to be determined on a case-by-case basis by examining the totality of the circumstances. *North Carolina* v. *Butler*, 441 U.S. 369, 374-375 (1979); *United States* v. *McNeil*, 433 F.2d 1109, 1112 (D.C. Cir.1969). A

statement is voluntary for purpose of due process so long as the statement is "the product of an essentially free and unconstrained choice by its maker." *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 225-26 (1973).

Defendant Liles fails to proffer any facts which would indicate that his will was overborne. *See Rogers* v. *Richmond*, 365 U.S. 534, 544 (1961) (government conduct must be "such as to overbear [a suspect's] will to resist and bring about confessions not freely self-determined"). Defendant Liles contact with the two federal agents took place in a public restaurant in the afternoon. Liles readily agreed to an interview, and it was he who determined where and when he would speak to the agents. This is not a case where the defendant was physically intimidated or tricked into speaking.

Moreover, for a statement to be involuntary, it must have been caused by government overreaching. *Colorado* v. *Connelly*, 479 U.S. 157, 163-64 (1986) ( "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law"). Defendant has pointed to no indication of such conduct in this case and therefore, his motion must be denied.

IV.     CONCLUSION

WHEREFORE, the government respectfully requests that defendant Liles' motion to suppress statements be denied.

                                                Respectfully submitted,

                                                JEFFREY A. TAYLOR
                                                United States Attorney

By: _____/s/_____
      VIRGINIA CHEATHAM
      Assistant United States Attorney
      D.C. Bar No. 411980
      Virginia.cheatham@usdoj.gov
      Fraud/Public Corruption Section
      555 4th Street, N.W., 5th Floor
      Washington, D.C. 20530
      (202) 514-9732

CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2007, a copy of the foregoing Opposition was sent via electronic case filing to: counsel for the defendant Joe D. Liles, Rudolph Acree.

                                       _____/s/_____
                                       Virginia Cheatham
                                       Assistant U.S. Attorney

# EXHIBIT 1

FD-302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription  08/12/2005

Joe D Liles, ████████████████████████████████, SSN ████████████, DOB ████████, phone number (████████████████), was informed of the identity of the interviewing agents. Also present was SA Ronald D Williams, Internal Revenue Service. Liles was informed of the purpose of the interview and then provided the following information:

Liles provided his Maryland drivers license for identification: ████████████████ that was issued on ████████████, ████ and expires on ████████████.

Liles works as the manager and part owner in Joe's Unisex Barber Shop. Liles other partner is W████e O████. Liles has worked at the barber shop for 26 years. Liles works everyday at the barbershop except Wednesday and weekends. Liles is married to J████████ Liles.

Liles is currently the Pastor of a 125 member congregation at the St. John's Baptist Church located in Shepherdstown, West Virginia and serves as a Police Chaplin for Washington Metropolitan Department for the past 15 years. Liles attended Washington Baptist Seminary from 1979 until 1983. Liles stated that he also holds an honorary degree from Weldon University in North Carolina.

Liles has served as a Public Notary for the State of Maryland for 12 - 15 years. Liles recently renewed his Public Notary licenses. Liles notarizes approximately 10-12 items a week. Liles charges $2 per seal to notarize the documents regardless of the number of signatures.

Liles has be cutting Duane McKinney's hair for approximately 20 years. Leon M████████ usually cuts McKinney's hair when he comes into to the barber shop. If M████████ was not available Liles would cut McKinney's hair.

Liles understood McKinney to be involved in real estate. Liles believed McKinney was also involved in a family business but did not know any particulars. Liles was unaware of the make or model car that McKinney drove. Liles did not know any of

---

Investigation on  08/10/05  at  Washington, DC

File #  29B-WF-231207                               Date dictated  08/10/05

by  SA Kelly D. Bender:kdb

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

29B-WF-231207

Continuation of FD-302 of __Joe D. Liles__ , On __08/10/05__ , Page __2__

McKinney's family members nor did he know where McKinney lived. Liles was unaware of McKinney's criminal record.

    Liles advised he notarized deeds for McKinney without both parties to the transaction being present to sign the documents. Liles notarized the documents because he trusted McKinney. McKinney would always have an excuse as to why the person or persons could not be present. Liles acknowledged he knew that notarizing the documents without the parties to the transaction present was wrong. Liles understood that his job as a public notary was to verify that the persons signing the documents before him were who they identified themselves to be.

    McKinney never brought another person or party to any transaction which he notarized for McKinney. When Liles questioned McKinney if the transactions were legitimate McKinney stated "I'm not about no mess". All documents Liles notarized were signed prior to him affixing the notary seal and outside of his presence.

    Liles was shown a deed identified as square 0828 lot 0044. Liles advised he notarized the document and that Robert Louis did not appear before him when he notarized the document.

    Liles was shown a deed identified as lot 19 Square 5090. Lilies advised he notarized the document and that Carson Ruffner did not appear before him when he notarized the document.

    Liles was shown a deed identified as lot number 50 square 3566. Lilies advised he notarized the document and that Ronald Washington did not appear before him when he notarized the document.

    Liles was shown a deed identified as lot number 805 square 5341. Lilies advised he notarized the document and that John Harrington did not appear before him when he notarized the document.

    Liles only charged McKinney $2 dollars for each document which required a notary seal. McKinney never made any large donations to Liles' church.

    Liles' income is approximately $30,000 from pasturing and his income from the barbershop is approximately $45,000 a year totaling $75,000.

FD-302a (Rev. 10-6-95)

29B-WF-231207

Continuation of FD-302 of __Joe D. Liles__ , On __08/10/05__ , Page __3__

    Liles is willing to take a polygraph concerning the information he provided. Liles believes that he should accept the punishment for what was done. Liles believes he should not have notarized the signatures, but trusted McKinney and believed McKinney would not have put him is such a situation.

    McKinney has never asked Liles to hold or deposit any money into his bank accounts. McKinney has never made any promises or financial arrangement with him. Liles and his wife have purchased a new home in Upper Marlboro, Maryland.

    Liles has two bank accounts, one at W▮▮▮▮▮▮ Bank and the other at F▮▮▮▮▮▮▮▮▮▮▮▮▮ Union in Largo, Maryland.

**EXHIBIT 2**

Case 1:07-cr-00113-RBW   Document 54-4   Filed 11/09/2007   Page 1 of 2



U.S. Department of Justice

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

February 1, 2007

PERSONAL AND CONFIDENTIAL
HAND DELIVERED

Mr. Joe D. Liles


Dear Mr. Liles:

    The Federal Bureau of Investigation, Internal Revenue Service, and the District of Columbia's Department of Insurance, Securities & Banking, in conjunction with the United States Attorney's Office for the District of Columbia, have been conducting an investigation which shows that you may have committed violations of the federal criminal code, including violations involving 18 U.S.C. Section 513 (Falsely Endorsed Security) and aiding and abetting a violation of the District of Columbia criminal Code Section 22-1402 (Recordation of Deed).

    We would like to afford you an opportunity to discuss this matter before deciding whether to bring formal criminal charges. A meeting has been scheduled for **Monday, February 26, 2007 at 10:00 a.m.**, at my office on the 5th floor of the Judiciary Center Building at 555 Fourth Street, N.W., Washington, D.C. 20001. As these are serious violations, which carry possible jail sentences, you will need to bring an attorney with you. If you cannot afford to hire an attorney, please telephone Ms. Sarah Forrest, Paralegal Specialist with our office at (202) 307-1458 no later than Friday, February 16, 2007. If you are truly without funds to hire an attorney, Ms. Forrest will attempt to arrange to have an attorney appointed for you.

    Your failure to appear at this meeting may result in an application for a warrant for your arrest in regard to this investigation.

Sincerely,

JEFFREY A. TAYLOR
United States Attorney

By: *(signature)*

Virginia Cheatham
Assistant United States Attorney

cc: Sarah Forrest