# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Criminal No. 07-0113 (RBW)** |
| | : | |
| **v.** | : | |
| | : | |
| **DUANE MCKINNEY** | : | |
| | : | |
| **and** | : | |
| | : | |
| **JOE D. LILES,** | : | |
| **Defendants.** | : | |

## GOVERNMENT'S MEMORANDUM REGARDING ADMISSIBILITY OF CERTAIN GOVERNMENT EXHIBITS

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby provides the Court with the following memorandum of law regarding the admissibility of certain government exhibits.

I.    **Business Records**

On July 27, 2007, the government filed a motion to introduce business records through a declaration by the custodian of records pursuant to Fed. R. Evid. 902(11) **[doc 22]**. Initially, Christopher Davis, Esq., the defense attorney for McKinney, filed a notice saying that he did <u>not</u> oppose the motion **[doc 40]**, but then a few days later, the attorney filed a notice representing that the defendant withdrew his consent and now opposes the motion **[doc 42]**, although he gave no reasoning for the opposition. Defense attorney for Joe D. Liles has not indicated his position.

If the Court grants the motion, the government intends to move the admission of hundreds of pages of business records through the use of declarations, pursuant to Fed. R. Evid. 902(11). At current count, there are approximately 40 (forty) custodians of records who would be needed to be called as witnesses at trial, if the Court were to deny the government's motion.

For this reason, the government respectfully requests that the Court rule on the government's motion **[doc 22]** before the January 14, 2008 motions hearing.

II.    <u>**Self-Authenticating Certified Documents**</u>

Self-authenticating documents are covered by Federal Rule of Evidence 902.  Under Fed. R. Evid. 902(1), a document containing the seal of the U.S. government or an state, territory or district thereof is considered self-authenticating.  There are three types of evidence which the government proffers are admissible as self-authenticating documents: 1) income tax returns from the Internal Revenue Service (IRS); 2) death certificates and deeds; and 3) civil court case pleadings and transcripts of court proceedings.

A.    **Documents from the IRS**

The government intends to introduce income tax returns and/or return information of both defendant Duane McKinney and The Brotherhood of Men ("The Brotherhood").  In addition, the government's evidence includes certifications of lack of filing for certain years during the pendency of the scheme.  These records are self-authenticating, as containing the seal of the U.S. government, and are relevant as none of the proceeds from the sales of the properties were included on returns by either McKinney or The Brotherhood.

B.    **Death Certificates**

The crux of this case is that many of the "grantors," whose purported "signatures" were affixed to Deeds transferring properties, were dead at the time of the transferring Deeds.  To prove this essential element, the government will introduce deeds and death certificates (and relatives' testimony).  Some of the deeds and death certificates are self-authenticating, containing the seal of the local government and thus are admissible without further testimony.

2

### C.     Admissions by the Defendant McKinney in Civil Court Cases

Federal Rule of Evidence 801(d)(2)(A) allows, as non-hearsay, admissions by party-opponent, when "the statement is offered against a party and is the party's own statement."  Fed. R. Evid. 801(d)(2)(A).  Defendant McKinney has made various admissions in civil court cases which are "the party's own statement," and would be "offered against a party."  *Ibid*.  The government seeks to admit statements from five sources, outlined below:

First, in a case initiated by the defendant McKinney not by the heir or the government, McKinney claims that he "was the sole owner" of the Benning Road property, that "The Brotherhood of Men [was] a corporation owned by [] McKinney", and that The Brotherhood "manage[d] and rehabilitate[d] real estate owned by [] McKinney."  Amended Complaint, noted as signed by the defendant on May 18, 2007, attached as Exhibit 1.

Second, in a civil forfeiture case, defendant McKinney admitted that his address had been "266 Harry S Truman, Dr. Largo Md," the address of record for The Brotherhood on multiple bank accounts and deeds.  *See* Notice, Exhibit 2.

Third, in a Superior Court case involving the property at 1544 New Jersey Avenue, N.W., the parties entered into a "Consent Order" which was signed by defendant McKinney, the opposing lawyer, and the Superior Court judge.  The property at 1544 New Jersey Avenue, N.W. had been the subject of a Deed, purportedly signed by the then-deceased "William Dempsey," transferring the property to Duane McKinney.  This Consent Order states, "Duane McKinney, in open court, [] represented himself to be the President of Defendant, The Brotherhood of Men, Inc. and [] further acknowledged that said Deed was not executed by the Grantors therein."  Consent Order, attached as Exhibit 3.

3

Statements in the fourth and fifth sources include false exculpatory statements regarding how defendant McKinney came to obtain title to properties. Fourth, in another case brought by McKinney against another heir, Vincent Dorsey, McKinney alleged in his signed Complaint, "Mr. Vincent Dorsey granted ownership of these properties unto Mr. Duane McKinney. This was granted verbally in 1988." Signed Complaint, Exhibit 4.

Fifth and finally, regarding another property and another civil proceeding, defendant McKinney made statements which are the subject of his Motion to Suppress Statements **[doc 44]**. After being sworn by the Superior Court judge, defendant McKinney told the court that he "bought the property from a person whom [he] believed that was Elwood J. Marks." Transcript of Hearing, attached as Exhibit 5, at 8. Defendant McKinney claimed that he looked at "Mr. Marks' ID." *Ibid*. Defendant McKinney told the court that the person who brought Mr. Marks to him "was just a referral. People know that I invest in property." *Ibid*. However, he "had no idea" of the name of the referrer, but paid a "referral fee." *Id.* at 9.[1]

The statements the government intends to introduce from these civil cases are bracketed on Exhibits 1 - 5 attached to this Memorandum. All of these statements are admissible through self-authenticating certified copies of court records and transcripts. In *United States* v. *Cohen*, 946 F.2d 430 (6th Cir. 1991), the defendant's consent judgement from a "companion" civil case was admitted in his criminal trial as a "personal admission properly admitted under Federal Rule of Evidence 801(d)(2)A)." *United States* v. *Cohen*, 946 F.2d at 435. Indeed, our Circuit allowed depositions from civil cases as "substantive evidence" of the fraud. In *United States* v.

---

[1]The defense moved to suppress on the grounds that the judge should have warned McKinney of his rights against self-incrimination and that the statements were involuntary. The government opposed the motion **[doc 64]**.

*Vecchiarello*, 569 F.2d 656 (D.C. Cir. 1977), the Circuit ruled that the sworn depositions

"constituted admissions against interest, and as such, were properly admitted as substantive

evidence." *United States* v. *Vecchiarello*, 569 F.2d at 665.[2]  *See also United States v. Flores*, 679

F.2d 173 (9th Cir. 1982) (statements made in "initial step" toward civil complaint admissible in

criminal trial) *cert. denied*, 459 U.S. 1148 (1983).  Thus, the statements are admissible through

certified copies of court documents.

## III.    Summary Testimony and Charts

Federal Rule of Evidence 1006 provides that:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary or calculation.  The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time or place.  The court may order that they be produced in court.

Raw evidence such as that sought to be introduced -- hundreds of pages of financial

records, bills of sale, checks, deposit tickets, withdrawal slips, bank statements, cashier's checks,

wire transfer notices from the bank documents, title abstracts, real estate settlement documents --

certainly falls within the category of documents too voluminous to be conveniently examined in

court.  In the instant case, the government will seek to introduce in evidence the underlying

documents (which have been given or made available to the defense in discovery).  The D.C.

Circuit has approved of summary witnesses, such as proposed in this case.  *See United States* v.

*Lemire*, 720 F.2d 1327 (D.C. Cir. 1983) (summary of lengthy and complex testimony and

---

[2]The government also notes that Judge Lamberth also allowed civil depositions in a criminal trial, ruling that, as public records under Fed. R. Evid. 902, the depositions were admissible as self-authenticating through certified copies.  *See United States v. Sayan*, 1989 WL 22992 (D.D.C. 1989).

documents), *cert. denied*, 467 U.S. 1226 (1984).  *See also United States* v. *Stephens*, 779 F.2d

232, 239 (5th Cir. 1985)("the fact that the underlying documents are already in evidence does not

mean that they can be 'conveniently examined in court'").

The government also anticipates introducing summary charts[3] to aid the jury.  These

charts will summarize the property transfer records, financial records, and monetary transactions.

Summary charts are permissible as long as the charts are "accurate, authentic, and properly

introduced before it may be admitted into evidence."  *United States* v. *Scales*, 594 F.2d 558, 563

(6th Cir.), *cert. denied*, 441 U.S. 946 (1979).  *See also United States* v. *Weaver*, 281 F.3d 228,

233 (D.C. Cir. 2002)(chart summarizing documents admissible even without underlying

documents in evidence or cautionary instruction given to jury).

The government's proposed charts fairly and accurately outline the facts, without using

inflammatory and prejudicial wording.  Such charts will aid the jury in analyzing the evidence

supporting the charged counts of the superseding indictment.  The government will ask the Court

to instruct the jury that the charts are being admitted solely for the jury's convenience, and are

valid only to the extent they accurately reflected the underlying evidence and that if the summary

evidence does not correctly reflect the facts proved at trial, the jury should give the summary

evidence only such weight as it deserved.[4]

_____

[3]Drafts of these charts will be made available to the defense by December 21, 2007.

[4]Similar instructions in *Lemire* helped dispel any danger that the jury would treat
summary evidence as additional proof.  *See Lemire*, 720 F.2d at 1348 & n.32; *see also*, *e.g.*,
*United States* v. *Paulino*, 935 F.2d 739, 753 (6th Cir. 1991) (no abuse of discretion in admitting
summary evidence where jury instructed that charts "are not in and of themselves evidence or
proof of any facts," charts were used "only as a matter of convenience," and jury should
disregard charts if it found they did not accurately summarize the evidence).

Conclusion

The government respectfully requests the Court to permit the introduction of evidence as described above.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
for the District of Columbia

By:      ____/s/_____
VIRGINIA CHEATHAM
Assistant U.S. Attorney
Bar No. 411980
Virginia.cheatham@usdoj.gov
555 4th Street, N.W.
Washington, D.C.  20530
(202) 514-9732

CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of December 2007, a copy of the foregoing Government's Memorandum of Admissibility has been sent via electronic case filing to: counsel for the defendant Joe D. Liles, Rudolph Acree, and counsel for defendant Duane McKinney, Christopher M. Davis.

_____/s/_____
Virginia Cheatham
Assistant U.S. Attorney

# EXHIBIT 1



FILED
DOCKETED
MAY 18 2005
Register Of Wills
Clerk of the Probate Division

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Probate Division

DUANE McKINNEY
   266 *Nanny Straumon Dnws*
and    *Lango, Md  20744*

THE BROTHERHOOD OF MEN, INC.
   *268 Nanny Straumon Antd*
   Plaintiffs    *Lango Md 20744*

vs.                                   Foreign Estate No. 2004-FEP-00100

ESTATE OF ELWOOD MARKS, JR.
TIFFANY MARKS, PERSONAL REPRESENTATIVE
   *1001 Pennsylvania Ave NW Suite 600*
and    *Wash, DC 20009*

THE DISTRICT OF COLUMBIA
   *Serve: Mayor, District of Columbia*
   Defendant   *441 4th St NW*
   *Wash, DC 20001*

## AMENDED COMPLAINT

Duane McKinney, and The Brotherhood of Men, Inc., bring this claim against the Estate

of Elwood Marks, Jr., and the District of Columbia and for reasons state as follows:

1. On or about February 10, 2005, a person purporting to be Elwood Marks, Jr.conveyed

to Duane McKinney, Plaintiff, a parcel of real property known as Square 5341, Lot 0012, in a

subdivision made by Eli Busada, also known as 4968-4972 Benning Road, SE, Washington, DC.

2. As a result of his belief that McKinney was the sole owner of the aforementioned

property, the The Brotherhood of Men, Inc., a corporation owned by Plaintiff McKinney  that,

among other things, manages and rehabilitates real estate owned by Plaintiff Duane McKinney,

paid at McKinney's direction taxes and assessments to the District of Columbia government to

maintain McKinney's ownership of said property.  Those payments include back property taxes

in the amount of $17,932.10 paid to the DC government on February 15, 2005, a special

CERT00120

assessment in the amount of $2,580.15 paid to the DC government on February 15, 2005. Copies of cashiers' checks and receipts are attached hereto as Exhibit 1.

3. Plaintiffs have since received information that McKinney was defrauded when he obtained the aforementioned deed to the property that is the subject of this Complaint. Accordingly, Plaintiffs seek reimbursement for such monies expended from the Defendant, who, as a result of the fraud perpetuated on the Mr. McKinney, will reap a windfall resulting from the payment of those taxes and charges by Plaintiffs for the property.

4. On October 20, 2005, Plaintiff The Brotherhood of Men, Inc. filed a claim against the Estate in the amount of $20,512,25, plus interest at 12% per annum from February 15, 2005.

5. On or about November 2, 2006, said claim was disallowed by the estate.

6. Defendant has been unjustly enriched by the payment of said monies by Plaintiff The Brotherhood of Men, Inc. to the District of Columbia government on behalf of the property of the Defendant/Estate, upon the belief that the Plaintiff McKinney was the owner of said property.

7. The aforesaid monies were paid to the District of Columbia for property taxes owed under the mistaken belief that the Plaintiffs were the legitimate owners of the property. Accordingly, the monies should be refunded to the Plaintiffs.

WHEREFORE, Plaintiff demands judgment against the Defendants, in the amount of $20,512.25, plus interest and court costs.

Respectfully submitted,

Ronald L. Schwartz #372788
4907 Niagara Road, Suite 103
College Park, MD 20740
(301) 474-2300
Attorney for Plaintiffs

Duane McKinney
signed in front of me
this 18th day of May, 2007,
S. Elaine Kennell
ADROW

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _14_ day of May, 2007, I mailed a copy of the foregoing, by first class mail, postage prepaid, to: Piper D. Hendricks, Esq., 1001 Pennsylvania Avenue, NW, Suite 800, Washington, DC 20004, Attorney for Tiffani Marks.

_____
Ronald L. Schwartz

A TRUE COPY ATTEST

Register of Wills for the District of Columbia
Clerk of the Probate Division
By _____ 12/11/07
Deputy Clerk

# EXHIBIT 2

PRAECIPE

# United States District Court
## for the District of Columbia

the _28th_ day of _September_ 2006

United States of America

vs.

One hundred Fifty-Nine thousand and Forty
Dollars in United States Currency Et al

Civil / Criminal
Action No. 1:05-CV-2404 RBW

The Clerk of said Court will _Change Address of the
Defendant @ (Duane McKinney). Old Address was
266 Harry S. Truman Dr Largo Md 20774_

Date _____

BAR IDENTIFICATION NO. _____

**RECEIVED**

SEP 28 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Signature _____
Duane McKinney
Print Name
Address 1610 R St S.E #3
City Washington  State D.C.  Zip Code 20020
Phone Number 202-492-0550

**CERTIFICATE OF SERVICE**

I Duane McKinney will serve the United States Attorney
Office (Judith Kidwell) this Notice of Change, By
555 4th St N.W Room 4818 Washington D.C. 20001
September 30, 2006.

# EXHIBIT 3

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| JONATHAN DEMPSEY, et al ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| vs ) | Civil Action No. 04-006556 |
| ) | Calendar #6 |
| THE BROTHERHOOD OF MEN, INC., et al ) | Honorable Geoffrey Alprin |
| ) | Next Scheduled Event: 12/10/04 |
| Defendants ) | Initial Conference |

## C O N S E N T   O R D E R

Upon consideration of the Motion for Default Judgment filed herein, the Points and

Authorities and Affidavits filed herein, the lack of response thereto, and the consent thereto

expressed by Defendant, Duane McKinney, in open court, who represented himself to be the

President of Defendant, The Brotherhood of Men, Inc., and who further acknowledged that said

Deed was not executed by the Grantors therein, it is this _28_ day of _JAN._, 2005,

ORDERED, that the Deed from William Dempsey and Jonathan Dempsey to The

Brotherhood of Men, Inc., recorded in the Office of the Surveyor for the District of Columbia on

March 3, 2004, as Instrument No. 29855 is hereby declared to be *void ab initio*, and be of no

force and effect, and it is further

ORDERED, that any subsequent transfer of any interest in the property by The

Brotherhood of Men, Inc. or its successors and/or assigns is hereby declared to be *void ab initio*,

and it is further,

ORDERED, that Count Two of the Complaint filed herein be dismissed "WITH

PREJUDICE."

_____
JUDGE, Superior Court for the District of
Columbia

MISC00514

CONSENT:

DUANE McKINNEY, Defendant
and President of Defendant Brotherhood of
Men, Inc.

HARRY M. STERN, Esq., Attorney for
Plaintiffs

COPIES TO:

Harry M. Stern, Esq.
10400 Connecticut Ave., #405
Kensington, MD 20895

Duane McKinney
266 Harry S. Truman Drive
Largo, MD 20774

Mary E. Beale, Resident Agent
The Brotherhood of Men, Inc.
3501 22nd Street, SE
Washington, DC 20020

MISC00515

# EXHIBIT 4



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

**DUANE MCKINNEY**
**266 HARRY S. TRUMAN DRIVE**
**LARGO, MD 20774**

    **Plaintiff**

v.

**VINCENT DORSEY**
**2511 quail dr apt 6**
**Columbia mo 65202**

DCO 0003017-06

FILED
CIVIL ACTIONS BRANCH
MAY 19 2006
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC

**Civil Action No:** _____

**This Action is Related to**

**CIVIL ACTION NO:05-3894**
**Currently Before Judge Zeldon**

### COMPLAINT FOR DECLATORY JUDGMENT AND
### TO QUIET TITLE TO REAL PROPERTY
*(Action Involving Real Property)*

    This is an equitable action to declare a clearance of title work and thereby to quiet title to certain real property located in the District of Columbia. All other claims involving the real property, including those pending disposition before this Court in Civil Action No.05-3894    ("the related case before this Court"), are more appropriately addressed in other proceedings and are not intended to be affected by the Complaint or by an relief requested herein.

1.    Jurisdiction of this Court is founded on D.C. Code Sec. 11-921 (2001 ed.).

2.    Plaintiff is the rightful owner of the Square 5663, Lots 38, 37, 46, 47, 48, 49 and 50 in Washington D.C. as per plat recorded in the Office of the Surveyor for the District of Columbia and the Recorder of the Deed Office.

3.    Plaintiff has been the owner of these properties every since 1988. Mr. Vincent Dorsey granted ownership of these properties unto Mr. Duane McKinney. This was granted verbally in 1988.

4.    Mr. Vincent Dorsey did sign Lillian Archer's name on the legal documents on October 14, 2004. Granting the Brotherhood of Men, Inc. 100% rights and ownership of these properties.

5.    Mr. Vincent Dorsey legally has the power of attorney to sign Lillian Archer's name to the documents surrounding these properties.

6.    Plaintiff has a cloud on the title to these properties by the following actions:

    A. Accusations have been made that the deed is a forged document because at the time of signing the deed documents, Lillian Archer was deceased.

    B. Mr. Vincent Dorsey is the inheritor of these properties stated as follows:
        Square 5663, Lots 38, 37, 46, 47, 48, 49 and 50

    C. Plaintiff has claim to the sole ownership of these properties.



1. There was a legal transfer of this real estate unto the Brotherhood of Men, Inc. from Vincent Dorsey whom was directly the individual who has the right to sign and sell the properties of Lillian Archer.

2. Plaintiff did pay approximately $31,000 (Thirty One Thousand Dollars) in expenses on this property after becoming the owner.

3. Based on the above, Plaintiff is entitled to a judgment acquiring the title to the properties as follows: Square 5663, Lots 38, 37, 46, 47, 48, 49 and 50

## CLAIMS FOR RELIEF

Wherefore, Plaintiff prays to this Honorable Court to issue and Order:

1. Quieting title in Plaintiff by declaring that good and perfect title in fee simple to the Square 5663, Lots 38, 37, 46, 47, 48, 49 and 50.

2. Declaring the deed good and equitable.

3. Declaring Plaintiff's title good of record and in fact, subject only to such liens, encumbrances, and other interests as may be established in other proceedings outside of this action;

4. ANTHONY DORSEY STATED TO TWO PEOPLE THAT HE HAD NO PROBLEM WITH HIS INTEREST BEING TRANSFER UNTO THE BROTHERHOOD OF MEN INC AND HE KNEW THE ORGANIZATION OWNED THE PROPERTY SINCE THE 80"S. ANTHONY DORSEY IS THE BROTHER OF VINCENT DORSEY.

5. Granting such other further relief that the Court considers just and proper.

Respectfully submitted,

MAY 19, 2006
Dated:

Mr. Duane McKinney
266 Harry S. Truman Drive
Largo, MD 20774

# EXHIBIT 5

1          SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

2                          CIVIL DIVISION

3

. . . . . . . . . . . . . . . . . . . X
4                                      .
MOORING TAX ASSET GROUP, INC.,        .
5                                      .
                    PLAINTIFF,         .
6            vs.                       .   Civil Action No.
                                       .
7    ELWOOD J. MARKS, JR.,             .        03-5830
                                       .
8               DEFENDANTS.            .
. . . . . . . . . . . . . . . . . . . X
9                                          WASHINGTON, D.C.
                                           APRIL 26, 2005
10

11          The above-entitled action came on for a
     Hearing, before the Honorable JOAN ZELDON, Associate Judge,
12   in Courtroom Number 100, commencing at approximately 10:00
     A.M.
13

                         THIS TRANSCRIPT REPRESENTS THE PRODUCT OF
14                       AN OFFICIAL REPORTER, ENGAGED BY THE
                         COURT, WHO HAS PERSONALLY CERTIFIED THAT
15                       IT REPRESENTS HER ORIGINAL NOTES AND
                         RECORDS OF TESTIMONY AND PROCEEDINGS OF
16                       THE CASE AS RECORDED.

17          APPEARANCES:

18

19

20

21

22

23              CELESTINE R. FRANKLIN, RPR
                   OFFICIAL COURT REPORTER
24             TELEPHONE NO. (202) 879-1054

25
                                                            1

1

2       On behalf of Plaintiff:
            BILL WALLER, ESQUIRE
3           WASHINGTON, D.C.


4       On behalf of Defendant McKinney:
            PRO SE
5

6       On behalf of Defendant Marks:
            PRO SE
7

        On behalf of Attorney General:
8           JOSEPH FERGUSON, ESQUIRE
            Assistant Attorney Gerneal
9

10      On behalf of the District of Columbia:
            JAMES G. FLOOD, Esquire
11          Assistant United States Attorney

12

13

14

15

16

17

18

19

20

21

22

23

24

25

2

1                          PROCEEDINGS

2              THE DEPUTY CLERK:  Your Honor, calling for the

3    record the matter of Mooring Tax Asset Group versus Elwood

4    J. Marks Jr., 03 CA 5830.

5              Parties, please identify for the record.

6              MR. WALLER:  Good morning, your Honor.  Bill

7    Waller on behalf of the plaintiff, Mooring Tax Asset Group.

8              MR. MC KINNEY:  Dwyane McKinney.

9              THE COURT:  I guess you are over there.  You're a

10   defendant.

11             Isn't he?

12             MR. WALLER:  Yes, that's correct.

13             THE COURT:  All right.  Mr. McKinney, you need to

14   stand over there next to Ms. Marks, I guess.

15             MS. MARKS:  Tiffani Marks, PR for the estate.

16             MR. FERGUSON:  Joseph Ferguson, Assistant Attorney

17   General.

18             THE COURT:  And, Mr. McKinney, you've been served;

19   right?

20             MR. MC KINNEY:  Yes.

21             THE COURT:  Okay.  So state your name for the

22   record.

23             MR. MC KINNEY:  Dwayne McKinney.

24             THE COURT:  Dwayne McKinney, defendant.

25             MR. FLOOD:  Your Honor, if I may, my name is James

                                                              3

 1   G. Flood, I'm an Assistant United States Attorney for the
 2   District of Columbia.  I don't have an active role in this
 3   proceeding, but I wanted to identify myself to the court.
 4           THE COURT:  Well, welcome.  It's a public
 5   courtroom.  And then actually I invited your office to come
 6   and listen to this because I have concerns.  And there is
 7   somebody else who just walked in, but he doesn't have to
 8   identify himself.
 9           MR. FLOOD:  Thank you, your Honor.
10           THE COURT:  All right.  Mr. Waller, for the record
11   would you state the facts as you understand them?
12           MR. WALLER:  Yes, thank you, your Honor.
13           I represent a tax sale purchaser, who purchases
14   property in February 2003.  I've actually inherited this
15   case from a former attorney.  I got the case in March.  And
16   it's a couple --
17           THE COURT:  Mooring Tax Asset Group purchased the
18   property in 2003?
19           MR. WALLER:  Correct.
20           THE COURT:  Do you remember what month?
21           MR. WALLER:  February.
22           THE COURT:  Okay.  Go ahead.
23           Well, it's actually purchased -- you didn't
24   actually purchase the property --
25           MR. WALLER:  Correct.  Tax certificate.

4

1           THE COURT:  You purchased the tax certificate for

2    the property in February 2003.  Okay.  Go ahead.

3           MR. WALLER:  And as I said, I entered my

4    appearance, actually, it looks like it was April 18th of

5    2005.  And after entering my appearance, I had an occasion

6    to speak with Ms. Tiffani Marks, who was the personal

7    representative of the estate of Elwood J. Marks, Jr.

8           And at the time that the complaint was filed,

9    Elwood J. Marks, Jr. was the last record owner of the

10   property.  As I say, just a couple weeks ago in a

11   conversation with Ms. Marks, during the conversation I was

12   actually researching the land records on the D.C. Web Page,

13   and I noticed that there was a deed dated February 10, 2005,

14   and recorded February 14, 2005.  And the deed was from

15   Elwood J. Marks to Dwayne McKinney.  And when I asked

16   Ms. Marks during our phone conversation about that, she was

17   not aware of it.

18          And I asked if Elwood J. Marks was the father; she

19   said, he was, and she also said that her father had passed

20   away on April 24, 2003.  And, again, the deed was signed

21   February 10, 2005.

22          THE COURT:  All right.  He passed away in

23   April 2003?

24          MR. WALLER:  Correct.

25          THE COURT:  I believe I have the death

                                                    5

1    certificate, if I recall correctly.  I was shown the death

2    certificate.  It may have been -- where is the death

3    certificate?

4            MS. MARKS:  I have the original with me.

5            THE COURT:  You have the original with you?

6            MS. MARKS:  Yes.

7            THE COURT:  Yes, I have a copy.  I'm glad you have

8    the original.  You should keep the original.

9            And the death certificate shows that Elwood J.

10   Marks died at age 69, on April 24, 2003.  In this deed

11   recording on the D.C. Web Site shows that someone signed his

12   name on 2/10/05 --

13           MR. WALLER:  Correct.

14           THE COURT:  -- and sold the land to Mr -- the

15   property to Mr. McKinney?

16           MR. WALLER:  That's correct.

17           THE COURT:  And, Ms. Marks, you're the PR of your

18   dad's estate?

19           MS. MARKS:  Correct.

20           THE COURT:  You know nothing about this?

21           MS. MARKS:  No.

22           THE COURT:  You learned about it from Ms. Slayer

23   (ph.)?

24           MS. MARKS:  Correct.

25           THE COURT:  At this point, Mr. McKinney, let me

                                                              6

1  recite what you told me, as I recall, when I asked you about

2  this when it first came up.  You happened to be here for

3  another case.  I asked you if you would kindly stay, and

4  then I asked you, if I recall, bluntly, how did you come to

5  purchase property from a dead man.  And I think this is what

6  you told me -- if I'm not correct, please, correct me

7  because I'm going from my memory -- I think you said you

8  have people -- I know you're a regular on this calendar,

9  that you have a number of cases?

10             MR. MC KINNEY:  Yes, ma'am.

11             THE COURT:  And you said, you have people out

12  there looking for properties for you, and that one of your

13  people brought an individual to you who said he was Elwood

14  J. Marks, and who showed you ID.  And you bought the

15  property from him, and that you paid $30,000.  Do I have

16  that right?

17             MR. MC KINNEY:  Yes.  Not my people.  It just that

18  I'm a person that --

19             THE COURT:  First let me ask you to raise your

20  hand.  And do you solemnly swear the testimony you're about

21  to give is true, so help you God?

22             MR. MC KINNEY:  Yes.

23             THE COURT:  And I will remind you there is someone

24  from the U.S. Attorney's Office sitting in this courtroom

25  who is interested in this.  I'm not trying to in any way

7

1    mask that, because something is wrong here, that's clear.

2    So go ahead now and tell us what happened.

3             MR. MC KINNEY:  Actually, I bought the property

4    from a person whom I believed that was Elwood J. Marks.

5             THE COURT:  Um-hmm.  And according to the deed it

6    was notarized?

7             MR. MC KINNEY:  Yes.

8             THE COURT:  So did you look at Mr. Marks' ID.

9             MR. MC KINNEY:  Yes.

10            THE COURT:  And what kind of ID did he show you?

11            MR. MC KINNEY:  It wasn't a driving license, it

12    was an ID.

13            THE COURT:  What kind of ID?

14            MR. MC KINNEY:  I have no idea.  I mean, it just

15    had a picture of him and his name on it.

16            THE COURT:  Um-hmm.  And who was the person who

17    brought Mr. Marks to you?

18            MR. MC KINNEY:  Actually, it was just a referral.

19    People know that I invest in property.

20            THE COURT:  Okay.  And what is the name of the

21    referrer?

22            MR. MC KINNEY:  I have no idea.

23            THE COURT:  Just a nameless person brought this

24    person to you with ID?

25            MR. MC KINNEY:  Yes.  I don't keep names of people

8

1    who bring me individuals whom I purchase properties from.

2    It's just that I give them a referral fee.

3            THE COURT:  Um-hmm.  And do you Harold Jones, and

4    Joe Lylus (ph), these are people, or the witness and the

5    notary of the transfer to you?

6            MR. MC KINNEY:  No.

7            THE COURT:  Well, how did they come to

8    participate?

9            How did the sale come to take place?

10           Okay.  I mean, someone brought this man to you.

11   He says his name is Elwood Marks, and he's ready to sell the

12   property to you.  I assume you made the arrangements?  How

13   did the arrangements get made?

14           MR. MC KINNEY:  We purchased the property, and

15   everything is transacted to take over, and they get the

16   paperwork that's needed.

17           THE COURT:  They went and the paperwork.  Who is

18   they?

19           MR. MC KINNEY:  Elwood Marks?

20           THE COURT:  So he handled it all himself?

21           MS. MARKS:  Whom I believed, yes.

22           THE COURT:  And he provided --

23           Who provided the notaries for you witnessing your

24   purchase of this?

25           MR. MC KINNEY:  Well, I did refer him to a notary

9

1    in the neighborhood in Landover, Maryland.

2            THE COURT:  And was that Harold Jones?

3            MR. MC KINNEY:  I don't know exactly who he is.  I

4    just know that they do notary in the Landover area.

5            THE COURT:  Um-hmm.  Excuse me.  That would have

6    been Joe Lylus.  Is that who you referred him to?

7            MR. MC KINNEY:  I would say.  I just referred him

8    to a notary that I know of.

9            THE COURT:  So you know of Joe Lylus.

10            MR. MC KINNEY:  I don't know verbatim, but I do

11    know that the notary that he went to was a notary that I've

12    went to before.

13            THE COURT:  So you've used Mr. Lylus before?

14            MR. MC KINNEY:  Yes.

15            THE COURT:  And do you have his address?

16            MR. WALLER:  No.

17            THE COURT:  It's in Landover?

18            MR. MC KINNEY:  Yes.

19            THE COURT:  What street?

20            MR. MC KINNEY:  It's 704 Rock --

21            THE COURT:  Rockville Pike -- 704 Rockville Pike?

22            MR. MC KINNEY:  It's 704 Martin Luther King

23    Highway.

24            THE COURT:  704 Martin Luther King Highway is

25    where Mr. Lylus is?

                                                            10

1          MR. MC KINNEY:  That where the notaries are.

2          THE COURT:  That's where the notaries are.  Do you

3    know him individually?

4          MR. MC KINNEY:  No.

5          THE COURT:  Had you ever seen him before?

6          MR. MC KINNEY:  Yes.

7          THE COURT:  So he's acted as a notary before?

8          MR. MC KINNEY:  Yes.

9          THE COURT:  So you didn't arrange this?  Mr. Marks

10   did?

11         MR. MC KINNEY:  When you say arranged it, I mean,

12   I referred him to a notary whom is in the area of Landover,

13   Maryland.

14         THE COURT:  How did Mr. Marks pay you?

15         MR. MC KINNEY:  No one paid me anything.  I paid.

16         THE COURT:  Oh, I'm sorry.  You paid $30,000.  Do

17   you have a cancelled check?

18         MR. MC KINNEY:  No, I do not.

19         THE COURT:  Did you pay in cash?

20         MR. MC KINNEY:  Yes, I did.

21         THE COURT:  Okay.  All right.

22         Well, I've been asked to issue a preliminary

23   injunction against your transferring this property to

24   anybody else.  The factors I am supposed to apply in this

25   civil lawsuit are, the substantial likelihood of success on

11

1   the merits of the plaintiff and proving that either -- in

2   proving that your claim is not one that can -- that you

3   don't have a right to redeem, I guess, is the right way to

4   put it, Mr. Waller.  Would you agree?

5           MR. WALLER:  I would agree, your Honor.

6           THE COURT:  All right.  Whether the plaintiff will

7   suffer irreparable harm; whether more harm will result from

8   denying the injunction than granting it in the public

9   interest.

10          So, Mr. McKinney, would you like to speak to any

11  of these criteria before I consider the Motion for a

12  Preliminary Injunction?

13          MR. MC KINNEY:  Mr. Waller, is he acting on behalf

14  of this defendant?

15          THE COURT:  Mr. Waller, who do you represent?

16          MR. WALLER:  I represent the tax sale purchaser.

17          MR. MC KINNEY:  It seems as though that he has no

18  logistics in filing an injunction, but Ms. Marks does.

19          THE COURT:  Well, he does at this point, because

20  he wants this property, and he will get his -- Mooring Asset

21  will get it unless she redeems.

22          MR. MC KINNEY:  The property has already been

23  redeemed.  Have you researched --

24          THE COURT:  No one has ever told me that.  Has the

25  property been redeemed?

12

1          MR. WALLER:  There were taxes paid in February of

2     about 17 or 18 thousand dollars --

3          THE COURT:  By Ms. Marks?

4          MR. WALLER:  I believe by Mr. McKinney.

5          THE COURT:  Oh, he's tried to redeem this

6     property?  Those are new facts for me.

7          MR. WALLER:  There was a payment made --

8          THE COURT:  Okay.  I didn't know this.

9          MR. WALLER:  -- it looks like, apparently,

10    February 24, of 17,132.10 as of --

11         THE COURT:  So no one knew about this.  Here's

12    this lawsuit going on in this court, he allegedly purchases

13    the property and comes in and tries to redeem it.

14         This is really interesting, more interesting than

15    I realized.  Tell me what happened, Mr. Waller; and then,

16    Mr. McKinney, you can respond, of course.

17         MR. WALLER:  A payment was made, as I said --

18         THE COURT:  A payment of taxes?

19         MR. WALLER:  -- on February 24, 2005, and I'm

20    looking at the copy from the D.C. --

21         THE COURT:  That must be really soon after he

22    bought it?

23         MR. WALLER:  Correct.  And that's -- I don't know

24    if there is a --

25         THE COURT:  Of $17,000 in taxes?

13

```
 1              MR. WALLER:  Yes.  $17,932.10.  And I don't know
 2    if there is a gap there probably is.  Maybe Mr. Ferguson
 3    would know better than I would between the time the payment
 4    was actually made and the time that it shows up on the --
 5              THE COURT:  So is there any more taxes due?
 6              MR. WALLER:  As of 4/14/05, last week, there are
 7    showing still taxes owed -- now this would be for the first
 8    half of 2005 -- of $523.57.  And they are showing a clean
 9    city lien of $1855.
10              THE COURT:  Let me get this.  5 2 3 6 5?
11              MR. WALLER:  5 2 3 5 7.
12              THE COURT:  And a clean city lien of what?
13              MR. WALLER:  $1855.88.
14              MR. MC KINNEY:  That's when it dates from?
15              MR. WALLER:  The as of date is 4/8/05 -- there are
16    six separate clean city liens that were -- that add up to
17    that $1855.88 total figure.
18              THE COURT:  Covering what period?
19              MR. WALLER:  The earliest levy date is
20    September 11, 1997.  And then the most recent levy date is
21    March 22nd.
22              THE COURT:  Well, why don't you give us the dates
23    of each one.
24              Because, Mr. McKinney, and I know you know that --
25              MR. MC KINNEY:  I have something to tell him
```

14

1  after -- I have something to say after.

2          THE COURT:  Okay.  Go ahead.  Well, let us just

3  get all the facts.  So what are the other clean city liens?

4          MR. WALLER:  Yes.  There's one on September 11,

5  1997, $150; one levy on February 6, 1998, $505.88; another

6  clean city lien levied on March 10, 1988 -- I'm sorry, 1998,

7  $600; one levied on January 20, 1998, for $150; another levy

8  on the same date, January 20, 1998, also for $150.

9          THE COURT:  Two of them for the same amount on the

10 same day?

11         MR. WALLER:  Yes.  They also provide control

12 numbers, and the control numbers I see here are different.

13         THE COURT:  Okay.

14         MR. WALLER:  And the last one is levied on March

15 22, 2003, for $300.

16         THE COURT:  Okay.  And there's been no reasonable

17 attorneys fees and costs paid, I assume?

18         MR. WALLER:  Correct.

19         THE COURT:  So there has not been redemption of

20 the property, that's what those facts mean to me.

21         But go ahead, Mr. McKinney.

22         MR. MC KINNEY:  All of that what he has stated has

23 been paid.  Also --

24         THE COURT:  Wow -- wow, wow, wow.  You've paid all

25 the clean city liens?

15

1           MR. MC KINNEY:  Yes.

2           THE COURT:  Mr. Ferguson, is that correct?

3           MR. FERGUSON:  I don't know.  This is the first

4    time hearing about this, your Honor.  I know redemption has

5    been attempted.

6           THE COURT:  He hasn't been paid, and that's part

7    of redemption.  As a regular participant on the foreclosure

8    calendar, you know that property is not fully redeemed until

9    reasonable attorneys fees and costs are paid.

10          So, sorry, Mr. McKinney, there is still a little

11   bit of unfinished business here if you are the valid owner,

12   which seems somewhat clouded.

13          MR. MC KINNEY:  I do understand that, your Honor.

14   But after 20 days of --

15          Ms. Marks, were you ever called by me?

16          THE COURT:  Mr. Waller.

17          MR. MC KINNEY:  Mr. Waller, were you ever

18   contacted by me?

19          MR. WALLER:  No.

20          MR. MC KINNEY:  No, actually, he wasn't because

21   his firm somehow -- he no longer worked for the firm that he

22   was --

23          THE COURT:  I'm sorry.  I'm not following you.

24          MR. MC KINNEY:  He was the attorney for another

25   firm.

16

1        THE COURT:  Um-hmm.

2        MR. MC KINNEY:  And they no longer had him working

3   for that firm.

4        THE COURT:  Okay.  Does that have anything to do

5   with this?

6        MR. MC KINNEY:  Yes.  I had tried getting in

7   contact with him numerous times.

8        THE COURT:  And you weren't able to?

9        MR. MC KINNEY:  I wasn't able to.

10        THE COURT:  Okay.

11        MR. MC KINNEY:  And also the file was tooken by

12   his client.  His client just was, I believe, was walking

13   around with the file.

14        THE COURT:  Well, I understand.  You tried to get

15   ahold of him and pay off the reasonable attorney's fees is

16   what you're saying, but you didn't succeed?

17        MR. MC KINNEY:  No.

18        THE COURT:  Is that a fair summary of what you

19   said?

20        MR. MC KINNEY:  Yes.

21        THE COURT:  Okay.  So the property is not

22   redeemed.  And he still does have an interest.

23        Now, I agree with you, Mr. McKinney, that

24   Ms. Marks also has an interest.  And she has said the last

25   time that she was going to retain counsel; is that correct?

17

1          MR. MC KINNEY:  I'm still trying.  I'm still

2     attempting.

3          THE COURT:  Okay.

4          MR. MC KINNEY:  May I?

5          THE COURT:  Yes, of course.

6          MR. MC KINNEY:  I can see that he still -- he's

7     the one filed this injunction.  He's saying that he has the

8     interest, but he has no logistic ownership of the tax deed?

9          THE COURT:  He owns the tax certificate.  This

10    lawsuit is alive and well, and it will be until the property

11    is fully redeemed and the deed is issued to the redeemer,

12    which hasn't happened yet.  So at this point in time it is

13    appropriate for him to have filed this motion.  And I rule

14    it appropriate.

15         So I understand you would like for me to say he

16    has no interest, and therefore, there's nothing anybody can

17    do with the fact that you bought this property from a dead

18    man it turns out, and quickly paid off all the taxes, you

19    say.  Although he says that that's something Mr. Ferguson is

20    going to check.

21         How soon can you let us know about these clean

22    city liens?

23         MR. FERGUSON:  I can call over to the office and

24    get the --

25         THE COURT:  Can you make a call now, and see if

18

1  you can get the facts?

2          MR. FERGUSON:  I don't know if I can get it

3  immediately.  That's an issue paid to DCRA.  I don't have

4  that number exactly with me.

5          THE COURT:  I understand.  So there's a dispute.

6  Mr. Waller said they haven't been paid, and you say they

7  have.  And until the city tells me whether they have been

8  paid --

9          Oh, she got it?

10          MR. FERGUSON:  Yes, she have the number?

11          MR. MC KINNEY:  Why don't we take a brief recess

12  and you call.

13          MR. FERGUSON:  Yes, your Honor.

14          MR. MC KINNEY:  Let's get all the facts out here.

15          (Recess.)

16          THE COURT:  I didn't know it would take so long,

17  but what is the answer?

18          MR. FERGUSON:  The upshot, your Honor, is that

19  there is no payments collected on the DCRA Web Site for that

20  square and lot.  Mr. McKinney said, he thinks it was paid at

21  the end of March.

22          According to Mr. May, who is chief of that office,

23  payments are reflected on the system -- entered on the

24  system on Thursday, and reflected on the web site the next

25  day.  So every week the web site is updated, and there is no

19

1  evidence of any payment there.  He indicated, of course,

2  that receipts are always issued when payments are made.  So

3  unless --

4          THE COURT:  Do you have a receipt?

5          MR. MC KINNEY:  Yes, I do.

6          THE COURT:  You want to show it to Mr --

7          MR. FERGUSON:  He said he did not have it, so

8  that's why --

9          THE COURT:  Okay.  All right.  Well, that

10  remains -- it's an assertion that's unconfirmed.  It really

11  doesn't matter legally, because even if they were all paid,

12  there is still the question of reasonable attorney's fees

13  and costs.

14          Mr. McKinney, is there anything you would like to

15  say further?

16          MR. MC KINNEY:  No.

17          THE COURT:  Ms. Marks, is there anything you would

18  like to say, because --

19          Wait.  Mr. Waller is she a party in this case?

20          MR. WALLER:  Ms. Marks?

21          THE COURT:  Yes.

22          MR. WALLER:  Yes.

23          THE COURT:  The estate was made a party?

24          MR. WALLER:  Yes.

25          THE COURT:  All right.  So you don't have to have

20

1   a lawyer, you may speak because you're a party.  Is there

2   anything you would like to say?

3           MS. MARKS:  Not at this time.

4           THE COURT:  Okay.  Well, I want to go through the

5   analysis --

6           MR. WALLER:  Your Honor, I have just one more

7   point that I could present to the court.

8           THE COURT:  Sure.

9           MR. WALLER:  I have -- evidently this is something

10  that has happened -- there is something similar has happened

11  in the past.  I have a copy of another deed to another

12  property, the grantee was the Brotherhood of Men,

13  Incorporated, in care of Dwayne McKinney.  And I also have a

14  consent order signed by Mr. McKinney in another case

15  unrelated to this case.  If I could hand up copies of --

16          THE COURT:  Only after you show it

17  to Mr. McKinney, Mr. Ferguson, and Mr. Marks.

18          MR. WALLER:  A copy for Mr. McKinney.

19          MR. MC KINNEY:  In reference to this, he only

20  presenting this that was filed against me in a consent

21  order.  I filed a half-million dollar lawsuit recently.  Do

22  you see that in this file?

23          MR. WALLER:  No, I did not.

24          MR. MC KINNEY:  Well, I filed a half-million

25  dollar lawsuit against the individual who filed this against

21

1    me.

2              THE COURT:  Well, you know what, I don't really

3    need that.  Why don't you show it to the U.S. Attorney if

4    he's going to pursue this.

5              MR. MC KINNEY:  You can keep that.

6              THE COURT:  All right.  I don't need it.

7              All right.  I'm ready to proceed.  I have to -- I

8    think we're going to make this -- I'm going to construe this

9    as a motion for a preliminary injunction under Rule 65.

10             Mr. McKinney, you still believe you own this

11   property, right?

12             MR. MC KINNEY:  Yes.

13             THE COURT:  You haven't transferred it to anybody

14   else, have you?

15             MR. MC KINNEY:  No, I haven't.

16             THE COURT:  Okay.  That's what I wanted to be sure

17   of.

18             I think there is a substantial likelihood of

19   success that Mr. Waller can show that Elwood J. Marks didn't

20   transfer this to Dwayne McKinney.  I mean, I think it's as

21   high a likelihood of success as I've ever seen in my

22   judicial career, because we have a death certificate.

23             I'm going to assume, for purposes of deciding this

24   motion, Mr. McKinney bought this property from a dead man.

25   I think there's a likelihood of success that he did not have

22

1    the right to redeem it, because he doesn't own it, because

2    it was improperly transferred to him, at least that's the

3    way it looks now.  I'm not adjudicating this finally.  This

4    is a preliminary injunction to restrain you from

5    transferring this to anyone else.  That's all we're doing

6    right now, everything else remains the same.

7          There could be irreparable harm if this was

8    transferred to a third party, because then we could get the

9    question of an innocent third party who knew nothing about

10   this, and that person's rights versus the rights of the

11   plaintiff in this case, as well as Ms. Marks' rights.  And I

12   don't think that justice would be served by allowing an

13   innocent third party to be brought into this.

14         I think more harm would result from not granting

15   this, than from granting this, because I think, now that the

16   record is clear that he was dead, and yet someone claiming

17   to be he allegedly transferred this to Mr. McKinney, and it

18   was allegedly notarized by, and witnessed by, other

19   individuals.  There is a substantial likelihood that that is

20   a nullity, that whole exercise was a nullity.

21         The public interest is extremely well-served by

22   this preliminary injunction, because the judicial system

23   should not encourage, sanction, or foster phoney transfers.

24   Since there is a likelihood that this transfer was -- the

25   word irregular doesn't do it justice -- inappropriate,

23

1  improper, probably illegal.

2          I'm going to enjoin you, Mr. McKinney, from

3  transferring it to a third person. Again, that's all I'm

4  doing today. I will issue a written opinion. I have now

5  ordered you and directed you on the record not to sell this,

6  transfer it, divest yourself in any of way of this property.

7          In other words, another way of looking at it,

8  maintain the status quo. Whatever relationship you have to

9  the property remains. I'm not nullifying your deed at this

10 point. I'm not doing anything other than enjoining you from

11 transferring it to someone else. Is that clear?

12          THE WITNESS: Yes.

13          THE COURT: All right. Do I have your address?

14          MR. MC KINNEY: Yes.

15          THE COURT: I need to make sure.

16          Do we have his address?

17          THE DEPUTY CLERK: Yes, your Honor.

18          THE COURT: I'd like to hand him a written

19 statement enjoining him today so the record is absolutely

20 clear.

21          What is the square and lot number so I can be real

22 clear. Oh, it's Square 5341?

23          MR. FERGUSON: Yes, your Honor.

24          THE COURT: You make copies for me.

25          And I would encourage you to have this recorded,

24

1  Mr. Waller.

2          MR. WALLER:  Very well, your Honor.  Thank you.

3          THE COURT:  Let me just read it, so in case I

4  haven't --

5          Defendant Dwayne McKinney is enjoined from selling

6  or in any way divesting himself or encumbering Square 5341,

7  Lot 001 to, more commonly known as, 4968-4972 Benning Road,

8  Southeast, Washington, D.C. until further written order of

9  this court.  The court's reasons have been stated on the

10  record.  The court, nevertheless, will issue a written order

11  later.

12          Do we have a next event in this case?

13          Mr. McKinney, you should wait for the order, copy.

14          MR. MC KINNEY:  Yes, your Honor.

15          THE COURT:  Do we have a next event here in the

16  ordinary course?

17          MS. MARKS:  May 6th status, your Honor?

18          MR. WALLER:  May 6th.

19          THE COURT:  Do we still need a May 6th status?

20          MR. WALLER:  I'm not sure we need that now.  I

21  believe the amended order -- I believe our new amended order

22  of publication asks for all parties claiming interest to

23  appear on June 24th.

24          THE COURT:  Why don't we set the next status date

25  after that, and cancel May 6th.

25

1    And, hopefully, by that time, Ms. Marks, you'll

2  have counsel.  Although, you don't have to, you can

3  represent yourself the estate.

4    MR. FERGUSON:  So the status is June 24th, your

5  Honor, and not May 6th?

6    THE COURT:  Well, I think it should be --

7  June 24th, oh, it's a Friday; right?

8    MR. FERGUSON:  Yes.

9    THE COURT:  Looks like a Friday.  June 24th.

10    MS. MARKS:  Both cases, your Honor?

11    THE COURT:  Yes.  What do you mean both?

12    MS. MARKS:  It's two.

13    THE COURT:  There are two, oh, that -- okay, yes,

14  both cases.  The next event is June 24th.

15    MR. MC KINNEY:  May I leave, your Honor?

16    THE COURT:  Yes.

17    MR. MC KINNEY:  Thank you.

18    THE COURT:  Thank you.

19    Court stands adjourned.

20

21    * * * * *

22

23

24

25

26

```
 1
 2                      REPORTER'S CERTIFICATE
 3
 4   I, CELESTINE R. FRANKLIN, RPR, an Official Court Reporter,
 5   for the Superior Court of the District of Columbia, do
 6   hereby certify that I reported, by machine shorthand, the
 7   proceedings had in the matter of MOORING ASSETS GROUP versus
 8   TIFFANI MARKS, PR, CA-5830-03, proceedings taken on April
 9   26, 2005.
10
11   I further certify that the foregoing 27 pages, constitute
12   the official transcript of said proceedings as transcribed
13   from my machine shorthand notes, and reviewed with my backup
14   tapes to the best of my ability.
15
16   In Witness Whereof, I have hereto subscribed my name this
17   26TH day of March, 2007.
18
19
20
21   CELESTINE R. FRANKLIN, RPR
     OFFICIAL COURT REPORTER
22
23
24
25
                                                         27
```